NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 68

No. 2014-451

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Franklin Unit, |
| | Criminal Division |
| | |
| Jason L. Gagne | January Term, 2016 |

Martin A. Maley, J. (motion to exclude); Alison S. Arms, J. (final judgment)

John T. Lavoie, Franklin County Deputy State's Attorney, St. Albans, for Plaintiff-Appellee.

Matthew F. Valerio, Defender General, Rebecca Turner, Appellate Defender, and Marie Horbar, Law Clerk (On the Brief), Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1.     **ROBINSON, J.**     This appeal stems from a road rage incident in St. Albans in which defendant Jason Gagne chased a couple across town, eventually pulling up next to their truck and pointing a rifle at them. Before trial, defendant moved to suppress the results of his alcohol breath test on the ground that he was not able to meaningfully communicate with his lawyer before submitting to the test due to his belief—which turned out to be well-founded—that his conversation with counsel was being recorded by the police. The trial court denied the motion, and following a trial, a jury convicted defendant of aggravated assault, simple assault, reckless endangerment, driving under the influence, and negligent operation of a vehicle. On appeal, defendant argues that the trial court erred by denying his motion to suppress, failing to instruct the jury that the definition of "threat" for the purposes of aggravated assault and simple

assault is based on an objective standard, and allowing convictions for aggravated assault, simple assault, and reckless endangerment for the same conduct, in violation of defendant's double jeopardy rights. We reverse the trial court's ruling on the suppression motion and reverse and remand defendant's conviction for driving under the influence; uphold the trial court's jury instructions; and affirm the aggravated assault and reckless endangerment convictions, but vacate the simple assault conviction on double jeopardy grounds.

¶ 2. The evidence, viewed "in the light most favorable to the State as the prevailing party," State v. McCarthy, 2012 VT 34, ¶ 2, 191 Vt. 498, 48 A.3d 616, is as follows. Complainants are an elderly couple. At trial, wife testified that on December 29, 2013, she and her husband left their home to drive in their truck to Wal-Mart. As the couple was traveling, defendant, who was driving a sedan, pulled out from the street to their right and made a left-hand turn in front of them. Wife, who was driving, slammed on her brakes to avoid a collision and honked her horn. Defendant "flipped [wife] the bird," and continued on his way in the opposite direction of the couple.

¶ 3. After continuing on, wife noticed in her rearview mirror that defendant had returned and was driving close behind the truck. When they stopped at an intersection, defendant pulled up next to the right-hand side of the truck and spewed obscenities at the couple. Once the light turned green, the couple turned left, and defendant turned right.

¶ 4. Still on their way to Wal-Mart, the couple traveled a few car lengths before defendant reappeared close behind their truck's bumper. Wife described defendant as angry with large eyes. She was "scared to death" and phoned the police. The couple stayed on the line with the 911 dispatcher throughout the rest of the incident.

¶ 5. After passing through several lights, the couple stopped at an intersection and defendant pulled next to them in the right-hand turn lane. At that point, wife saw defendant point a gun toward her husband. The gun, which wife described as a rifle with a silver scope,

2

was laid across defendant's left arm and held by his right hand. Wife testified that defendant had "malice in his eyes" and that she thought both she and her husband were going to die because of defendant's demeanor and constant "dogging" of the couple. When the light turned green, wife was relieved to see defendant taking the right-hand turn.

¶ 6. When the couple arrived at the turn for Wal-Mart, defendant once again appeared right behind the couple close to the truck's bumper. After entering the parking lot, the couple made a U-turn, and drove out of the parking lot back onto the main road, heading toward the St. Albans Police Department. At the next light, defendant again appeared behind the couple, and wife saw the gun briefly before defendant put it on the passenger side of his car. Once the couple entered downtown St. Albans, they turned towards the St. Albans Police Station and the police apprehended defendant.[1]

¶ 7. Officer Paul Morits was the arresting officer. He testified that when he approached defendant's car after stopping him in a parking lot, he saw a gun on the seat and two empty beer bottles. Officer Morits ordered defendant from the vehicle, handcuffed him, and had defendant stand next to the police cruiser. While defendant was standing next to the police cruiser, Officer Morits noticed alcohol on defendant's breath and noticed that defendant was unbalanced on his feet. Defendant was transported to the St. Albans police station.

I. The Suppression Motion

¶ 8. Defendant's suppression motion arises from events at the police station when defendant was processed for driving under the influence (DUI). In connection with that motion, the trial court made the following findings, which defendant does not challenge on appeal. The standard practice in the St. Albans Police Department is to record DUI processing, but to turn off the recording device when a defendant is given a chance to consult with an attorney. In this case, when defendant was about to speak to his attorney by phone, Officer Morits left the room, but

---

[1] Husband largely corroborated wife's testimony regarding defendant's conduct and testified that he thought defendant was going to shoot him.

forgot to turn off the recording device. As a consequence, defendant's conversation with counsel was recorded. Officer Morits did not disclose to defendant that the processing was being recorded. Defendant never asked the officer if he was being recorded, but throughout the booking process, defendant repeatedly stated "it's all being recorded," and further stated "I have no rights." Just prior to his telephone conversation with an attorney, defendant stated "I want to talk to a public defender, but I know what they will say . . . it doesn't matter, everything is being recorded anyway." Officer Morits did not respond to defendant's repeated statements that he knew that everything was being recorded, and defendant did not specifically request that the police turn off the recording device.

¶ 9. After a thirty minute conversation between defendant and counsel, Officer Morits returned and told defendant that his time with his attorney had ended. Officer Morits asked defendant if he would submit to a breath test, and defendant agreed. Defendant's breath sample resulted in a blood-alcohol concentration (BAC) of 0.121%.

¶ 10. Defendant moved to suppress the breath test results, arguing that defendant's belief that his conversation with counsel was being recorded caused him to feel inhibited in seeking legal advice.

¶ 11. The trial court disagreed and denied defendant's motion. The court noted that 23 V.S.A. § 1202 provides that a suspect has a right to consult with an attorney prior to either submitting to a breath test or refusing one. The trial court explained that this consultation must be meaningful and reasonably private, but the right of privacy is not absolute and must be balanced against security interests. The court concluded that, although defendant thought his conversation was being recorded, his belief was not objectively reasonable, and he was not entitled to suppression of the breath test results. Defendant renews his arguments on appeal.

¶ 12. In considering the parties' arguments, we consider first the applicable standard of review, and then the merits.

4

¶ 13.   With respect to the standard of review, we reject the State's argument that the trial court's ruling was based on a factual finding subject to deferential review.  When reviewing a motion to suppress, "we review the trial court's legal conclusions de novo and its findings of fact under a clearly erroneous standard."  State v. Oney, 2009 VT 116, ¶ 11, 187 Vt. 56, 989 A.2d 998.  The State argues the trial court's ruling was based on a credibility finding—namely, the court did not believe defendant's testimony that he felt inhibited.  Our reading of the trial court's decision, however, leads us to conclude that the trial court ruled that even if defendant believed he was being recorded and even if he personally felt inhibited, his belief was not reasonable.  That conclusion is a legal conclusion that we review anew, without deference.  See, e.g., State v. Weisler, 2011 VT 96, ¶¶ 18-20, ¶ 25, 190 Vt. 344, 35 A.3d 970 (holding in context of consent to search, trial court's conclusion regarding whether reasonable person in defendant's circumstances would feel free to refuse officer's request to search subject to nondeferential review); State v. Muntean, 2010 VT 88, ¶ 20, 189 Vt. 50, 12 A.3d 518 (noting in context of whether defendant was in custody for purposes of Miranda warnings that trial court's determination regarding circumstance surrounding interrogation and whether reasonable person would feel at liberty to leave subject to nondeferential review).

¶ 14.   Turning to the substance of defendant's argument, when the police unjustifiably monitor a defendant's conversation with counsel, and thereby limit the defendant's ability to meaningfully engage with counsel, that conduct violates 23 V.S.A. § 1202(c).  That statute provides that "[a] person who is requested by a law enforcement officer to submit to an evidentiary test or tests has a right . . . to consult an attorney before deciding whether or not to submit to such a test or tests."  Id.  The purpose of this provision is to ensure that defendants are able to freely and privately communicate with legal counsel.  Pfeil v. Rutland Dist. Ct., 147 Vt. 305, 309, 515 A.2d 1052, 1055 (1986).  This right to counsel was created by the Legislature to address the real concern that "any refusal to be tested not be lightly decided."  State v. Carmody,

140 Vt. 631, 636, 442 A.2d 1292, 1295 (1982). Accordingly, in order to satisfy this right, a defendant must be given "an opportunity to have a meaningful consultation with counsel" that is reasonably private. State v. West, 151 Vt. 140, 144, 557 A.2d 873, 876 (1988). This right to privacy is not absolute—"the degree of privacy an arrestee should be afforded . . . must be determined by balancing the individual's right to consult privately with counsel against society's interest in obtaining or preserving important evidence." Id. A violation of 23 V.S.A. § 1202(c) therefore occurs when "the police unjustifiably monitor a defendant's legal consultation and the monitoring inhibits, coerces, or otherwise restricts the defendant's ability to meaningfully engage with [counsel]." State v. Sherwood, 174 Vt. 27, 31, 800 A.2d 463, 466 (2002).

¶ 15. In assessing defendant's claim that a lack of privacy caused him to feel inhibited in engaging with counsel, we apply an objective test. West, 151 Vt. at 145, 557 A.2d at 876. We look at the totality of the circumstances and ask "how a reasonable person in the defendant's position would have understood the situation." Id., 557 A.2d at 877.

¶ 16. Our analyses in two prior decisions make it clear that the critical question in a case like this—involving the recording of a defendant's communications with counsel or a defendant's belief that the police are recording those communications—is whether the defendant reasonably felt inhibited in communicating with counsel such that he or she was denied meaningful consultation with an attorney. See Sherwood, 174 Vt. at 27, 800 A.2d at 463; State v. Powers, 2004 VT 39, ¶ 7, 176 Vt. 444, 852 A.2d 605. In Sherwood, the defendant was arrested for DUI and was given an opportunity to speak with a lawyer before deciding whether to take a breath test. However, unbeknownst to the defendant, the entire conversation was video and sound recorded. When the defendant learned of the video recording, he sought dismissal of his charges on the basis that the secret recording violated 23 V.S.A. § 1202(c). 147 Vt. at 29, 800 A.2d at 465. The trial court found that the State did not have a legitimate security concern in recording the defendant, but nonetheless refused to dismiss his charges because he failed to show

6

he was prejudiced by the recording. The defendant appealed, and we affirmed. In reaching our conclusion, we held that while the defendant's right to privacy was indeed violated, the defendant nevertheless had a meaningful conversation with his attorney because he never testified that he felt inhibited in his consultation. Id. at 31, 800 A.2d at 466. The critical fact in Sherwood was that "defendant did not feel inhibited in his conversation, presumably because he was unaware it was being recorded." Id.

¶ 17. In Powers, the defendant was arrested and processed for DUI. During processing, the defendant asked the interviewing officer if the conversation was being recorded either by audio or video, and the officer told the defendant yes as to both. After the officer read the defendant his rights under 23 V.S.A. § 1202(c), the defendant requested a consultation with an attorney before submitting to an evidentiary breath test. The officer dialed the public defender, left the room, and turned off the audio tape, but not the video. The officer never told the defendant the recording had been turned off. After the State filed DUI charges against the defendant, he moved to suppress evidence of his refusal to take the evidentiary test. At the suppression hearing, he testified "I didn't feel comfortable discussing my situation because I wasn't sure if there was something I would say that would be held against me." Powers, 2004 VT 39, ¶ 3. The trial court denied the motion to suppress, concluding that the defendant failed to demonstrate a connection between his inhibition and his subsequent decision to refuse the breath test. Id. ¶ 4. We reversed.

¶ 18. In reaching our conclusion, we noted that Powers presented the mirror image of Sherwood. Specifically, we noted that, in contrast to Sherwood, in Powers, the defendant reasonably believed he was being recorded, despite the officer turning off the recording equipment. Powers, 2004 VT 39, ¶ 9. Further, we found the defendant did not have a meaningful consultation with counsel because he testified that he felt inhibited by that conversation. Id. ¶ 10. That inhibition was objectively reasonable, as evidenced by the fact that

7

even the state's attorney conceded that under similar circumstances, he would feel inhibited. Id. We therefore concluded that "the perceived monitoring caused [the] defendant to feel inhibited from asking his attorney questions," warranting suppression of his refusal to submit to the breath test. Id. ¶ 13.

¶ 19. This case is closer to Powers than it is to Sherwood, and we conclude on the basis of the trial court's factual findings that a reasonable person in defendant's position under the circumstances of this case would feel inhibited in conferring with counsel. The trial court found that defendant repeatedly stated to the police officer his belief that everything, including his conversation with counsel, was being recorded, yet the police officer said nothing to contradict defendant's belief. Although Powers is a stronger case in that the police officer specifically told the defendant that he was being recorded, a reasonable person in defendant's circumstances here could conclude that the conversation was being recorded given the officer's silence in response to defendant's multiple statements that he knew he was being recorded. Accordingly, the motion to suppress should have been granted, and we reverse the judgment of conviction for driving under the influence.

## II. Jury Instructions

¶ 20. On appeal, defendant challenges the trial court's instructions relating to the aggravated assault charge as well as the simple assault by physical menace charge. Because the court's instructions concerning these respective charges were different, and given the possibility that the two arguments on appeal are subject to different standards of review, we review each challenge separately.

## A. Aggravated Assault

¶ 21. In instructing the jury on the aggravated assault charge, the trial court listed four essential elements to the crime: (1) defendant; (2) was armed with a deadly weapon; (3) threatened to use the deadly weapon; and (4) intended to threaten the complainants. In further

defining the third element, the court explained, "To threaten another person is to communicate by word or by deed an intention to inflict harm on the other person." The trial court described the fourth element as follows:

> The last essential element is that [defendant] intended to threaten another person. The State must have proven that [defendant] placed another person in fear of imminent bodily injury and that that [defendant] did not act inadvertently, because of mistake, or by accident. In order for you to find that [defendant] acted intentionally, you must find that it was his conscious objective to threaten another person.

The written instructions provided to the jury were different with respect to this last element. Rather than requiring that the State prove that defendant placed another person in fear of imminent bodily injury, the instructions required that the State prove that defendant "intended to place another person in fear of imminent bodily injury."

¶ 22. On appeal, defendant argues that the trial court erred in failing to instruct the jury that a threat is evaluated from the perspective of a reasonable person and not on the basis of whether the complaining witnesses felt threatened.[2] In considering the instructions, we review the charge as a whole to determine whether the instruction conveys the "true spirit and doctrine of the law, and there is no fair ground to say the jury has been misled by it." State v. Streich, 163 Vt. 331, 353, 658 A.2d 38, 53 (1996) (quotation and citation omitted). We will reverse based on faulty instructions only if the instructions, viewed in this light, "undermine confidence in the jury's verdict." State v. Kolibas, 2012 VT 37, ¶ 11, 191 Vt. 474, 48 A.3d 610 (quotation omitted).

¶ 23. Defendant is correct that whether conduct amounts to a threat is generally discerned from the perspective of a reasonable person under similar circumstances. In State v. Cahill, 2013 VT 69, 194 Vt. 335, 80 A.3d 52, we considered the definition of "threat" under the

---

[2] Our standard of review on appeal is contested, as the State argues that defendant did not adequately preserve his objection and defendant contends that he did. Because we conclude that the court's instruction were not error at all, we need not resolve this dispute.

aggravated assault statute. The defendant in that case was angry that his neighbor's farmhand was spreading manure too close to the defendant's property. He strode onto the field armed with a .45 pistol and stopped about twenty-five yards from the farmhand's truck. "[The] defendant then cocked a shell into his pistol and pointed it at the farmhand for a few seconds before turning the pistol to the right and firing it toward the woods." Id. ¶ 3. At the defendant's trial for aggravated assault, the farmhand testified that when the defendant pointed the gun at him he "was pretty much looking down the barrel," but that the defendant's actions did not cause him fear. Id. ¶ 5. On appeal, we affirmed the trial court's aggravated assault instruction. Of significance to this case, we noted that the trial court's instruction defining threat "correctly directed the jury to measure the effect of [the] defendant's communication according to the perception of a reasonable person, rather than the subjective fearlessness of the farmhand." Id. ¶ 18.

¶ 24. Defendant is also correct that in a portion of its spoken instruction concerning the intent element of the aggravated assault charge, the trial court improperly required the State to prove "that [defendant] placed another person in fear of imminent bodily injury," rather than focusing the jury on the effect of defendant's words or deeds on a reasonable person in similar circumstances. But we conclude that any error in this portion of the court's aggravated assault instruction is harmless in the context of the overall instruction and given the record in this case.

¶ 25. We reach this conclusion for several reasons. First, in the aggravated assault instruction, in defining "threaten," the trial court explained, "[t]o threaten another person is to communicate by word or by deed an intention to inflict harm on the other person." This instruction did not tie the definition of "threaten" to the effect of the communication on the individual allegedly threatened by defendant, but instead described a characteristic of the communication—its conveying an intent to inflict harm—as a necessary element of the charge. Nothing in the court's instruction suggests that the determination of whether a communication

10

conveys such an intent is a subjective one that turns on the victim's perception. See State v. Jones, 2008 VT 67, ¶ 23, 184 Vt. 150, 955 A.2d 1190 ("If the jury charge as a whole breathes the true spirit and doctrine of the law, we will uphold it."). While the court's oral instruction that the State had to prove that defendant placed another person in fear of imminent bodily injury may have imposed on the State a burden it did not in fact bear, the errant oral instruction did not purport to relieve the State of proving that defendant communicated an intent to inflict harm.

¶ 26. Second, as set forth below, the court's instruction concerning simple assault by physical menace required the State to prove (1) that defendant attempted to put another person in fear of imminent serious bodily injury, and (2) "a threat, by word or act, to inflict physical injury upon another person." The court expressly noted that the State did not have to prove that the victim actually was in fear of serious bodily injury, so nothing about this instruction suggested that the subjective effect of defendant's actions on complainant was relevant. The jury's guilty verdict on the properly charged simple assault charge reflects its conclusion that the State proved that defendant intended to threaten and did threaten the victims—the same elements at issue in connection with the aggravated assault charge.

¶ 27. Third, the court's written instructions, which it distributed to the jury before it orally charged the jury, did not contain the improper language directing the jury's attention to the victims' subjective reaction of fear. Instead, the written instructions properly directed the jury to consider defendant's intent to place another in fear of serious bodily injury.

¶ 28. And finally, defendant's argument of prejudice requires a view of the evidence that strains credulity. Defendant argues that he was prejudiced by the court's failure to specify that in assessing a threat—an expression of "an intention to inflict harm on the other person"— the jury should consider the perspective of a reasonable person to whom the communication is directed, and not necessarily the subjective experience of these complainants. Even if the court's omission was error, defendant was only harmed if a reasonable jury could conclude on this

11

evidence that defendant's following the couple through town and pointing a gun at them while next to them at a stop light would <u>not</u> cause a reasonable person to fear imminent bodily harm. We understand defendant's argument that due to the height of the truck windows as compared to the car, any subjective fear the complainants felt was not objectively reasonable, but we cannot agree on this record that any reasonable jury could have concluded that a reasonable person would not feel threatened under the circumstances.

## B.  Simple Assault by Physical Menace

¶ 29.    In instructing the jury on the elements of simple assault by physical menace, the court listed three elements: (1) defendant; (2) attempted to put another person in fear of imminent serious bodily injury; and (3) did so by using physical menace.  With respect to the second element, the court explained that the State must prove that defendant acted with the conscious objective of putting another person in fear of imminent serious bodily injury, and that the State need not prove that the victim actually was in fear of serious bodily injury.  The court defined "physical menace" as "a threat, by word or act, to inflict physical injury upon another person."

¶ 30.    As with the aggravated assault charge, defendant argues that the trial court erred in failing to instruct the jury that the threat underlying the "physical menace" element of the charge must be assessed from the perspective of a reasonable person, rather than the individual victims.

¶ 31.    In contrast to our review of the aggravated assault charge, we review defendant's objection to the simple assault instruction for plain error because defendant did not raise this objection to the simple assault instruction in his post-charge objection.  See V.R.Cr.P. 30; <u>State v. Rounds</u>, 2011 VT 39, ¶ 19, 189 Vt. 447, 22 A.3d 477 (absent an objection before the jury retires, "any claim of error is waived and we must review any appealed issue under a plain error standard").  "Plain error will be found only in rare and extraordinary cases where the error is

obvious and strikes at the heart of defendant's constitutional rights or results in a miscarriage of justice." State v. Bruno, 2012 VT 79, ¶ 44, 192 Vt. 515, 60 A.3d 610 (citation and alteration omitted).

¶ 32. The trial court's simple assault instruction does not constitute plain error, if error at all. In contrast to the component of the court's oral aggravated assault instruction noted above, nothing in the simple assault instruction suggested that the threatening character of defendant's conduct should be determined with reference to the victims' subjective fear. In fact, the court clearly instructed just the opposite, explaining, "[t]he state need not have proven that the victim actually was in fear of serious bodily harm." This was an accurate statement of the law. See State v. Jackson, 2008 VT 71, ¶ 16, 184 Vt. 173, 956 A.2d 1126 (noting in context of admissibility of evidence, statements by victim that victim himself felt fear are irrelevant to fear element contained in simple assault statute). Moreover, the instruction as a whole properly placed the focus on the objective character of defendant's words or acts—whether they conveyed an intent to inflict physical injury upon another person—rather than the reaction of the specific targets of those words or acts. The simple assault instruction did not amount to plain error.

### III. Double Jeopardy

¶ 33. Defendant's final argument is that given the charges and jury instructions in this case, he cannot be convicted of aggravated assault with a deadly weapon, simple assault by physical menace, and reckless endangerment because of double-jeopardy constraints. He argues that this Court should dismiss the greater convictions on account of the double-jeopardy violations.

¶ 34. The Double Jeopardy Clause provides that no person may "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V; see also Benton v. Maryland, 395 U.S. 784, 795 (1969) (noting that Fifth Amendment has been incorporated into Fourteenth Amendment and applies to States). The Clause prohibits second or subsequent

prosecutions for the same offense as well as multiple impositions of punishment for an offense. State v. Grega, 168 Vt. 363, 382, 721 A.2d 445, 458 (1998). Accordingly, while the legislative branch is free to define crimes and fix punishments, courts cannot impose more than one punishment for the same offense. "The Clause is best understood . . . as limited to assuring that the court does not exceed its legislative authorization." State v. Neisner, 2010 VT 112, ¶ 11, 189 Vt. 160, 16 A.3d 597 (quotation omitted). The Clause does not preclude the Legislature from imposing multiple punishments for the same conduct, provided the intent to do so is made clear. Grega, 168 Vt. at 382, 721 A.2d at 458. Hence, "[w]hen a defendant is tried in a single trial for two statutory offenses that criminalize the same conduct, whether or not a conviction and sentence may be had under each statute is a question of legislative intent, not constitutional prohibition." Id.; Missouri v. Hunter, 459 U.S. 359, 368 (1983) (noting that where legislative branch intended to impose multiple punishments for same conduct, "imposition of such sentences does not violate the Constitution" (citation omitted)).

¶ 35. When there is no explicit statement of legislative intent to impose multiple punishments, "we apply as a rule of statutory construction the test first enunciated by the Supreme Court in Blockburger v. United States, 284 U.S. 299, 304 (1932)." State v. Ritter, 167 Vt. 632, 632, 714 A.2d 624, 625 (1998) (mem.). The Blockburger test seeks "to divine whether the legislature intended to punish two separate offenses or one." Grega, 168 Vt. at 382, 721 A.2d at 458-59. We consider two offenses to be the same offense for double-jeopardy purposes unless each offense "requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304. If neither offense requires proof of a fact that the other does not, then a presumption arises that the Legislature did not intend to authorize the imposition of cumulative punishments for two offenses. Grega, 168 Vt. at 384-85, 721 A.2d at 460. This presumption may be overcome, but only by clear contrary legislative intent. Id. at 385, 721 A.2d at 460. In making this assessment, we consider "the elements of the crimes as they were charged." Neisner, 2010 VT 112, ¶ 12.

14

¶ 36.    Whether multiple convictions run afoul of double jeopardy limitations is a question of law that we review anew, without deference.  Id. ¶ 11.

A.    Aggravated Assault and Reckless Endangerment

¶ 37.    Defendant argues that in order to convict him of both crimes, the State had to prove the following elements for both the aggravated assault charge and the reckless endangerment charge:  (1) that defendant had a gun; (2) that defendant threatened to use the gun by pointing it towards another person; and (3) that when defendant pointed the gun at complainants he had the specific intent (or a lesser element of intent for the reckless endangerment charge) to threaten to use the gun.  Accordingly, since both the aggravated assault and the reckless endangerment charges required proof of identical elements, defendant argues, the Blockburger test is not satisfied, and defendant cannot be convicted of both crimes.

¶ 38.    We conclude that in this case each of these charges—aggravated assault and reckless endangerment—requires proof of an element not required for the other charge.

¶ 39.    The aggravated assault charge requires proof of an intent to threaten others, but does not require any proof that defendant placed them in actual danger.  The aggravated assault statute provides, "A person is guilty of aggravated assault if the person . . . is armed with a deadly weapon and threatens to use the deadly weapon on another person."  13 V.S.A. § 1024(a)(5).  The essential elements of the charge, as the trial court instructed the jury, are that the defendant (1) was armed with a deadly weapon; (2) threatened to use the deadly weapon; and (3) intended to threaten the complainant.  The State need not prove that the complainants were actually in danger in order to prove the elements of aggravated assault—it need only show that defendant was armed with a deadly weapon and intended to communicate by word or by deed an intention to inflict harm.

¶ 40.    By contrast, a conviction for reckless endangerment requires proof that the defendant placed another person in actual danger of death or serious bodily injury, and does not

15

require proof of a specific intent to threaten others. The statute provides, "[a] person who recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury" may be convicted of reckless endangerment. Id. § 1025. As the trial court instructed the jury in this case, in order to convict defendant of reckless endangerment the jury had to find that defendant recklessly placed another person in <u>actual</u> danger. See <u>State v. Emilo</u>, 146 Vt. 277, 278, 501 A.2d 1188, 1189 (1985) ("This Court has held 'that the Legislature, when it enacted 13 V.S.A. § 1025, intended to proscribe conduct which would place the victim <u>in actual danger</u> of death or serious bodily injury, not mere apparent danger.' " (emphasis added) (quoting <u>State v. McLaren</u>, 135 Vt. 291, 293, 376 A.2d 34, 36 (1977))).

¶ 41. As charged, litigated, and instructed in this case, the aggravated assault charge and the reckless endangerment charge each required an element of proof not required for the other charge. Although the reckless endangerment charge and the aggravated assault charge both relate to defendant's pointing a gun at the complainants, the court instructed that an essential element of the reckless endangerment charge in this case is that the firearm defendant pointed was operable and capable of causing death or serious bodily injury. See <u>State v. Messier</u>, 2005 VT 98, ¶ 9, 178 Vt. 412, 885 A.2d 1193 (noting that for conviction under 13 V.S.A. § 1025, "the State [must] prove that the firearm in question was loaded and operational"); <u>State v. Longley</u>, 2007 VT 101, ¶ 11, 182 Vt. 452, 939 A.2d 1028 (comparing aggravated assault statute to reckless endangerment statute, and concluding whether firearm is actually operable irrelevant to aggravated assault because aggravated assault "does not require an imminent threat"). Likewise, the court instructed the jury that the aggravated assault charge required proof that defendant intended to threaten another. For that reason, we conclude under the <u>Blockburger</u> test that the Legislature intended to allow multiple convictions and punishments for the same act pursuant to these differently defined offenses.

B. Aggravated Assault and Simple Assault

¶ 42. The parties agree that, as charged in this case, the simple assault count and the aggravated assault charge turn on the same elements, and that defendant cannot therefore be convicted of both aggravated assault and simple assault. Their disagreement lies in the proper remedy. Defendant argues that the appropriate remedy for this double jeopardy violation is to dismiss the greater charge. The State contends that since the jury found defendant guilty of both aggravated and simple assault, we should vacate the lesser simple assault conviction, and allow the aggravated assault conviction to stand. We vacate the simple assault conviction and affirm the aggravated assault conviction.

¶ 43. The Double Jeopardy Clause is designed to protect against three harms: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense imposed in a single proceeding. See Jones v. Thomas, 491 U.S. 376, 381 (1989). As the United States Supreme Court has noted, the interest protected in this third category of double jeopardy violations is "limited to ensuring that the total punishment [] not exceed that authorized by the legislature." United States v. Halper, 490 U.S. 435, 450 (1989) abrogated on different grounds by Hudson v. United States, 522 U.S. 93 (1997). Accordingly, "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Hunter, 459 U.S. at 366.

¶ 44. Applying these principles to this case, given the State's position, the proper remedy is to vacate the simple assault conviction and affirm the aggravated assault conviction.[3]

---

[3] The State is free to exercise its prosecutorial discretion to request that we vacate the greater conviction. See, e.g., State v. Breed, 2015 VT 43, ¶ 43, 194 Vt. 574, 117 A.3d 829 (declining to address which of two convictions should be vacated where defendant and State both requested that Court vacate sexual-assault conviction rather than conviction for sexual abuse of vulnerable adult). In this case, the State has clearly requested that the greater conviction stand if the multiple convictions violate double jeopardy.

17

The ensuing sentence on this greater charge cannot and will not exceed the total punishment for this offense authorized by the Legislature. See Thomas, 491 U.S. at 387 (upholding longer sentence with credit for time served as appropriate remedy to double jeopardy violation because respondent "had an expectation in serving either 15 years (on the one sentence) or life (on the other sentence)"). Defendant's conviction for simple assault is vacated and his conviction for aggravated assault is affirmed.[4]

The trial court's order denying defendant's motion to suppress the results of his alcohol breath test is reversed, his conviction for driving under the influence is vacated, and the case is remanded for further proceedings in connection with that charge. The convictions for aggravated assault and reckless endangerment are affirmed. The conviction for simple assault is vacated.

FOR THE COURT:

_____

Associate Justice

---

[4] In his reply brief, defendant argues that we should instruct the trial court to conduct a new sentencing on the remaining convictions. We decline to do so. "Generally, when less than all of the convictions in a case are reversed on appeal, a remand for resentencing on the affirmed convictions is not required if separate sentences were imposed for each offense." State v. Simpson, 160 Vt. 220, 225, 627 A.2d 346, 350 (1993). Instead, if separate sentences were imposed, "a remand for resentencing is appropriate only when the convictions or sentences for the reversed convictions appear to have influenced the trial court's sentencing regarding the affirmed convictions." Id. Nothing in the record leads us to conclude that the trial court's sentences on the charges we have affirmed (or that defendant has not appealed) were influenced by either of the convictions we are reversing—for DUI and for simple assault by physical menace. In fact, the trial court specifically emphasized that if defendant's crime were related only to alcohol abuse and addiction, the sentences would be different, but that the most troubling aspect of these crimes was defendant's "relentless pursuit and terrorizing of this couple, who were unknown to [him], without any provocation." Defendant has not shown sufficient connection between the trial court's sentences for the convictions we have affirmed and the two convictions we have reversed to warrant departure from the ordinary rule that a remand for resentencing on all charges is not required in circumstances like this.