LarryNOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 64

No. 2020-249

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Essex Unit, |
| | Criminal Division |
| | |
| Ryan R. Hovey | May Term, 2021 |

Michael J. Harris, J.

David Tartter, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Allison N. Fulcher of Martin, Delaney & Ricci Law Group, Barre, for Defendant-Appellant.

PRESENT:  Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1.    **CARROLL, J.**  Defendant appeals his convictions on two counts of aggravated sexual assault, arguing that the two convictions violate double jeopardy because, as charged under the circumstances, they constitute one offense.  Additionally, defendant argues that probation condition 41, which requires him to work and reside where his probation officer approves, is an improper delegation of power to his probation officer.  We agree that, as charged under the circumstances, defendant's convictions violate double jeopardy and remand for the State to elect which aggravated-sexual-assault conviction should stand.  Furthermore, because the trial court failed to support condition 41 with findings, we remand to give the trial court an opportunity to justify, revise, or remove the condition.

## I. Factual & Procedural History

¶ 2.     In August 2018, defendant and complainant drove to a friend's house to help him move. Defendant and complainant dated on and off between 2007 and 2017. Complainant was drinking prior to her arrival at the friend's house and continued to drink while assisting in the move. Defendant's nineteen-year-old coworker also agreed to help with the move.

¶ 3.     The three left the friend's home together in defendant's vehicle. Both men sat in the front seat and complainant sat in the back. Complainant was highly intoxicated, and she became unconscious during the drive. At this point, defendant suggested to his coworker that they both have sex with her. His coworker agreed. Defendant drove to a secluded cemetery and parked in an area not visible from the main road. During this time, complainant remained unconscious in the back seat of the car.

¶ 4.     Defendant unbuckled complainant's seat belt, undressed her from the waist down, and then invited his coworker to have sex with her. His coworker proceeded to have sex with complainant in the backseat while she was passed out. Defendant then attempted to have sex with complainant in the backseat. The space was too confined, however, and he dragged complainant out of the vehicle onto a nearby grassy area. Complainant briefly regained consciousness while defendant had sex with her on the ground, but she lost consciousness again after defendant pushed her face to the side.

¶ 5.     Afterwards, both men dressed complainant and lifted her unconscious body back into the car. While defendant drove back to complainant's apartment, she regained consciousness just long enough to hear the men discuss whether she was on birth control. The next thing complainant remembered was waking up in her bed with her clothes on. Several days later, complainant reported the incident to the Essex County Sheriff's Department.

¶ 6.    In December 2018, defendant was charged by information with two counts of aggravated sexual assault. The first count alleged that defendant had subjected complainant to repeated nonconsensual sexual acts as part of a common scheme and plan, in violation of 13 V.S.A. § 3253(a)(9). The second count alleged that defendant violated § 3253(a)(2) because he was joined by his coworker in sexually assaulting complainant. After the State presented its case, defendant argued that the facts supporting the two charges were the same and double jeopardy prevented conviction and sentencing on both charges. The court indicated it would allow the jury to deliberate on both charges and if the jurors returned guilty verdicts on both charges, the issue would be addressed. Following a two-day trial, the jury returned guilty verdicts on both counts.

¶ 7.    On March 13, 2020, the trial court issued an entry order, explaining that before sentencing, it wanted to address the issue that arose during the trial of whether convictions on both counts would violate the Double Jeopardy Clause.[1] In a short memorandum, mostly quoting our recent decision in State v. Fonseca-Cintron, 2019 VT 80, __ Vt. __, 238 A.3d 594, the State argued that convictions on both counts did not violate double jeopardy because § 3253(a)(2) and (a)(9) have different elements, and therefore constitute separate offenses. Defendant contended that although subsections (a)(2) and (a)(9) have different elements, convictions on both counts violated double jeopardy because both counts required proof of the same fact—that two persons sexually assaulted complainant.

¶ 8.    The trial court concluded that convictions on both counts would not violate double jeopardy. Applying the test first articulated by the U.S. Supreme Court in Blockburger

---

[1] In this order, the court gave the parties until March 20 to submit memoranda or request a hearing. Although defendant requested a hearing on March 17, the court denied his request, explaining that since its March 13 order, all in-person hearings had been suspended due to the COVID-19 pandemic. Because the double-jeopardy question was a legal matter, the court concluded that the parties could address the relevant issues by memorandum.

v. United States, 284 U.S. 299, 304 (1932), the court concluded that § 3253(a)(2) and (a)(9) were separate offenses because each required proof of a different fact. It explained that § 3253(a)(2) requires that the nonconsensual sexual assault occur while the actor is joined or assisted by one or more persons and § 3253(a)(9) requires proof of multiple nonconsensual sexual acts. But because the <u>Blockburger</u> test only creates a presumption of legislative intent, the court considered the structure of the aggravated-sexual-assault statute. It reasoned that because § 3253 specifies that the crime of aggravated sexual assault is committed under "any one" of the nine enumerated circumstances, the Legislature intended for "each and every one" of the specified circumstances to support an aggravated-sexual-assault conviction.

¶ 9. The trial court later sentenced defendant to two concurrent ten-year sentences and placed him on probation for life. The court imposed several standard conditions recommended in the presentence investigation report, including condition 41, which provides that "[defendant] shall reside/work where [his] Probation Officer or designee approves" and "shall not change [his] residence/employment without the prior permission of [his] Probation Officer or designee."

¶ 10. On appeal, defendant renews his argument that the two convictions violate double jeopardy because, as charged, they both required proof of the same fact—namely, that defendant and his coworker sexually assaulted complainant. Defendant also argues that condition 41 is an improper delegation of power to his probation officer. In response, the State argues that under the <u>Blockburger</u> test, there is a presumption that § 3253(a)(2) and (a)(9) are separate offenses because each subsection requires proof of a fact that the other does not. The State concedes, however, that condition 41 is overbroad because the court did not make findings justifying the condition.

4

¶ 11.    We review defendant's double jeopardy claim de novo and conclude that the two convictions violate the Double Jeopardy Clause.  Additionally, because defendant did not object below, we review condition 41 for plain error and conclude that the court committed plain error in imposing the condition without making findings on why the condition was necessary.

## II.  Double Jeopardy

¶ 12.    The first issue we address is whether convicting defendant on two counts of aggravated sexual assault violates double jeopardy.  The Double Jeopardy Clause in the Fifth Amendment of the United States Constitution provides that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend V; see Benton v. Maryland, 395 U.S. 784, 795-96 (1969) (holding that Fifth Amendment is applicable to states through Fourteenth Amendment).  The Clause "safeguards a criminal defendant from facing multiple punishments for the same offense."  State v. Abel, 2019 VT 22, ¶ 10, 210 Vt. 1, 210 A.3d 439 (quotation omitted).  "Because legislative bodies are empowered to define [offenses] and fix punishments, . . . the Clause is best understood as limited to assuring that the court does not exceed its legislative authorization."  State v. Breed, 2015 VT 43, ¶ 16, 198 Vt. 574, 117 A.3d 829 (alteration omitted) (quotation omitted).

¶ 13.    "Thus, when determining whether multiple convictions based on one act violate the Double Jeopardy Clause, our central inquiry is one of legislative intent, not constitutional prohibition."  Fonseca-Cintron, 2019 VT 80, ¶ 21 (quotations omitted). "If there is a clear indication that the Legislature meant to impose multiple punishments for the same conduct under different statutes, then we rely on that clear expression of intent."  Id. (quotation omitted).  If legislative intent is unclear, however, we "apply the test of statutory construction laid out in Blockburger v. United States to determine whether the charges describe two offenses or only one."  State v. Nelson, 2020 VT 94, ¶ 20, __ Vt. __, 246 A.3d 937.  Under the Blockburger test,

multiple charges "are considered the same offense for double jeopardy purposes unless each . . . requires proof of a fact that the other does not." State v. Ritter, 167 Vt. 632, 632-33, 714 A.2d 624, 625 (1998) (mem.) (quotation omitted). But because the Blockburger test only creates a presumption, it may be overcome "by a clear indication of contrary legislative intent." State v. Hazelton, 2006 VT 121, ¶ 39, 181 Vt. 118, 915 A.2d 224 (quotation omitted).

¶ 14. To begin, we consider whether "there is a clear indication that the Legislature meant to impose multiple punishments for the same conduct." Fonseca-Cintron, 2019 VT 80, ¶ 21 (quotation omitted). Unless the Legislature has "explicitly indicated an intent to authorize multiple punishments" for the same conduct under separate statutory provisions, we apply the Blockburger test. Nelson, 2020 VT 94, ¶ 23; State v. Gagne, 2016 VT 68, ¶ 35, 202 Vt. 255, 148 A.3d 986 (explaining that we apply Blockburger "[w]hen there is no explicit statement of legislative intent to impose multiple punishments"); Breed, 2015 VT 43, ¶ 18 (applying Blockburger test because "neither of the statutes at issue explicitly permit[ted] cumulative punishments for both offenses based on the same conduct"); Ritter, 167 Vt. at 633, 714 A.2d at 625 (applying Blockburger after noting that relevant statute did "not specifically provide for cumulative punishment").

¶ 15. Here, 13 V.S.A. § 3253(a) provides that "[a] person commits the crime of aggravated sexual assault" if they commit sexual assault under "any one" of the nine enumerated circumstances. As relevant here, subsection (a)(2) provides that a person commits aggravated sexual assault if he or she "is joined or assisted by one or more persons in . . . sexually assaulting the victim," and subsection (a)(9) provides that a person commits aggravated sexual assault if he or she subjects the victim "to repeated nonconsensual sexual acts as part of" a common scheme and plan. Because § 3253(a), including subsections (2) and (9), does not explicitly authorize cumulative punishment, we will apply the Blockburger test.

6

¶ 16.  The Blockburger test is "a rule of statutory construction" to discern whether the Legislature intended to authorize multiple punishment.  State v. Grega, 168 Vt. 363, 382, 721 A.2d 445, 458 (1998).  In applying the Blockburger test, "our focus is not on the evidence offered at trial but on the elements of crimes as they were charged."  State v. Neisner, 2010 VT 112, ¶ 12, 189 Vt. 160, 16 A.3d 597.  Multiple charges "are considered the same offense for double jeopardy purposes unless each . . . requires proof of a fact that the other does not."  Ritter, 167 Vt. 632, 632-33, 714 A.2d 624, 625 (quotation omitted).  Accordingly, if neither charge "requires proof of a fact that the other does not, then a presumption arises that the Legislature did not intend to authorize . . . cumulative punishments for two offenses."  Gagne, 2016 VT 68, ¶ 35.

¶ 17.  Based on the Blockburger test, the State argues that defendant's two convictions do not violate double jeopardy because 13 V.S.A. § 3253(a)(2) and (a)(9) each require proof of an element that the other does not—§ 3253(a)(9) requires proof of multiple nonconsensual sexual acts as part of a common scheme and plan and § 3253(a)(2) requires another person to participate in the sexual assault.  The State emphasizes that a person can be sexually assaulted more than once without another assailant joining in, and, conversely, another person can participate in sexually assaulting a victim without subjecting the victim to more than one sexual assault.  The State is certainly correct that, as defined in Title 13, subsections (a)(2) and (a)(9) each require proof of a fact that the other does not.

¶ 18.  But the Blockburger test requires us to look beyond the statutory text to the elements of the offenses "as they were charged."  Neisner, 2010 VT 112, ¶ 12; Nelson, 2020 VT 94, ¶ 25 ("Examining the elements of these two offenses, each crime as charged requires proof of at least one element that the other does not."); Fonseca-Cintron, 2019 VT 80, ¶ 23 ("Comparing the elements as charged, each count required proof of a fact that the others did

not."). Even if, as written in the criminal code, two statutes require proof of "an element that the other does not, we will not permit [multiple] convictions if, as specifically charged, the charges require proof of the same facts." Nelson, 2020 VT 94, ¶ 20 (alteration omitted) (quotation omitted).

¶ 19. For example, in State v. Neisner, we held that defendant's convictions for giving false information to a law enforcement officer, under 13 V.S.A. § 1754(a), and for impeding a public officer, under 13 V.S.A. § 3001(a), violated double jeopardy. 2010 VT 112, ¶ 9. Applying the Blockburger test, we noted that, as defined in Title 13, "each of these two crimes involves an element that the other does not"—false information "requires the giving of any false information with intent to implicate another" and impeding "requires an unlawful act that actually hinders the officer in an investigation." Id. ¶ 14. But as charged, we explained that the two convictions violated double jeopardy because "the hindering act underlying the impeding charge was the giving of false information." Id. We concluded that "[w]hile impeding and false information may be independent statutory crimes," as charged under those particular facts, "all the elements of the false information charge were contained in the impeding charge." Id.

¶ 20. Blockburger's as-charged principle indicates that defendant's convictions under § 3253(a)(2) and (a)(9) violate double jeopardy because, as charged, they each required proof of the same fact—that another person joined defendant in sexually assaulting complainant. In other words, as charged here, (a)(2) became a lesser-included offense of (a)(9). "An offense is a lesser-included offense of another if it is composed of some, but not all, elements of the greater offense and does not have any element not included in the greater offense." State v. Forbes, 147 Vt. 612, 616-17, 523 A.2d 1232, 1235 (1987). "[A] greater offense is therefore by definition the 'same' for purposes of double jeopardy as any lesser offense included in it." Brown v. Ohio, 432 U.S. 161, 168 (1977); see also State v. Dow, 2016 VT 91, ¶ 28, 202 Vt. 616, 152 A.3d 437

("[B]y definition a defendant cannot be convicted of both the greater and lesser-included offenses.").

¶ 21. As charged here, subsection (a)(2) required the State to prove that defendant's coworker joined defendant in sexually assaulting complainant, and (a)(9) required the State to prove that defendant subjected complainant to repeated nonconsensual sexual acts as part of a common scheme. In the instructions to the jury, "repeated sexual acts" was specifically defined as "two or more separate sexual assaults." In the State's closing argument, it emphasized that the second, separate sexual assault involved defendant's coworker: "[T]he Court is going to tell you that repeated means two or more times in this case, the acts of [defendant's coworker] and of the defendant himself." As charged here, (a)(2) was a lesser-included offense of (a)(9) because the elements of (a)(2)—that defendant's coworker joined defendant in sexually assaulting complainant—were all contained in the (a)(9) charge. We accordingly remand for the State to elect which aggravated sexual assault conviction should stand. Dow, 2016 VT 91, ¶ 29 ("Our case law is clear that the State has the right to choose which charge is to be dismissed.").

### III. Probation Condition 41

¶ 22. We now turn to the second issue: whether probation condition 41, which requires defendant to reside and work where his probation officer approves, is overbroad and unduly restrictive. Because defendant did not object to this condition below, we review for plain error. State v. Lumumba, 2018 VT 40, ¶ 9, 207 Vt. 254, 187 A.3d 353. Plain error consists of error that "is both obvious and strikes at the very heart of the defendant's constitutional rights or results in a miscarriage of justice if we do not recognize it." State v. Spooner, 2010 VT 75, ¶ 22, 188 Vt. 356, 8 A.3d 469 (quotation omitted). We conclude that the trial court committed plain error because it imposed the condition without making any findings to justify it.

¶ 23. Pursuant to 28 V.S.A. § 252(a), trial courts have discretion to impose conditions of probation that they deem "reasonably necessary to ensure" that a defendant "will lead a law-abiding life" or assist the defendant in doing so. "While not without limitation, a trial court's discretion in this context is expansive." State v. Nelson, 170 Vt. 125, 128, 742 A.2d 1248, 1250 (1999). We have cautioned, however, that "where fundamental rights are involved, special care should be used to avoid overbroad or vague restrictions." State v. Whitchurch, 155 Vt. 134, 137, 577 A.2d 690, 692 (1990).

¶ 24. In State v. Moses, we concluded that a condition requiring the defendant to reside where her probation officer directed amounted to an improper delegation of power to the probation officer. 159 Vt. 294, 300, 296, 618 A.2d 478, 482 (1992). We distinguished between allowing a probation officer to impose a condition of probation, which is "improper," and giving probation officers "discretion to implement conditions imposed by the court," which may be "necessary to require a defendant to participate in rehabilitative programs appropriate to the defendant's needs at a particular time in the probation period." Id. at 300, 618 A.2d at 481-82. The condition requiring the defendant to reside where her probation officer directed was an improper delegation of power, we explained, because it gave "open-ended authority to the probation officer to create any location-of-residence probation condition the officer deems appropriate." Id. at 300-01, 618 A.2d at 482. We emphasized that because "the changing of one's residence is not an incident of daily life[,] there is no reason why the court cannot anticipate the relevant issues and construct a proper condition." Id.

¶ 25. Later in State v. Freeman, the defendant challenged a similar condition requiring him to reside and work where his probation officer approved. We concluded that in light of our "previous rejection of a near-identical probation condition in Moses," the trial court committed plain error in imposing such a broad condition without making any findings indicating its

10

necessity. 2013 VT 25, ¶ 17, 193 Vt. 454, 70 A.3d 1008. We remanded to give the trial court "an opportunity to justify, revise, or remove" the condition. Id.; see also State v. Masic, 2021 VT 56, ¶ 26, __ Vt. __, __ A.3d __ (holding that in light of Freeman and Moses, condition requiring defendant to reside where his probation officer approved could not stand without any findings to justify it).

¶ 26. As the State concedes, Freeman dictates that the trial court committed plain error in imposing condition 41 without making any findings indicating why such a broad condition, which "essentially allows the probation officer to dictate where defendant will live and work," is necessary. Freeman, 2013 VT 25, ¶ 17. We accordingly remand to give the trial court an opportunity to revise, remove, or justify the condition.

Remanded for the State to elect which aggravated sexual assault conviction should stand and for the trial court to justify, revise, or remove condition 41.

FOR THE COURT:

_____

Associate Justice

¶ 27. **ROBINSON, J., concurring.** I agree with the majority's conclusion, but part ways with respect to its analysis of the double-jeopardy question. Whether or not the specific facts supporting the State's reliance on two distinct aggravating factors are functionally the same in this case, I do not believe the Legislature has authorized multiple convictions for a single act of sexual assault committed under multiple aggravating circumstances. In reaching this conclusion, I consider the purpose of the Blockburger test and its limitations in the context of predicate offenses, the language and structure of the sexual-assault statute under which defendant was twice convicted for a single act, and our own binding precedent in a remarkably similar context. Given the majority's approach to this and similar cases, I urge the Legislature

to examine the statutory schemes that identify predicate offenses and then aggravated offenses based on enumerated potentially aggravating factors, to make its intentions clear.

¶ 28.    The Blockburger test is merely a tool to help discern legislative intent; the Legislature's intent as reflected in the language and the structure of the statute remains the touchstone for the double-jeopardy analysis.  See State v. Fonseca-Cintron, 2019 VT 80, ¶ 24, __ Vt. __, 238 A.3d 594 ("We agree that the Blockburger test is only a tool of statutory construction, and, as always, our primary aim in construing a statute is to discern the intent of the Legislature.").  This Court has recognized that the test is " 'useful in identifying statutes that define greater and lesser included offenses in the traditional sense,' " but is " 'less satisfactory, and perhaps even misdirected, when applied to statutes defining "compound" and "predicate" offenses.' "  State v. Grega, 168 Vt. 363, 387, 721 A.2d 445, 461 (1998) (quoting Whalen v. United States, 445 U.S. 684, 708 (1980) (Rehnquist, J., dissenting)).

¶ 29.    Section 3253 is the latter type of statute.  It sets forth a list of nine circumstances under which a sexual assault may be enhanced to an aggravated sexual assault.  13 V.S.A. § 3253(a).  It specifically provides that "[a] person commits the crime of aggravated sexual assault if the person commits sexual assault under any one of the following circumstances."  Id. (emphasis added).  By its express terms, it requires only a single aggravating circumstance to elevate a sexual assault to an aggravated sexual assault, and also limits the court's reliance on aggravating factors to a single factor.  It does not purport to authorize multiple aggravations if a defendant commits a sexual assault under multiple aggravating circumstances; the statute establishes a minimum sentence of ten years and a maximum term of life for "the crime of aggravated sexual assault," and includes no language suggesting the possibility of an additional statutory sentencing consequence in the context of multiple aggravating factors.  13 V.S.A. § 3253(b).  And it definitely does not suggest that if a defendant commits a sexual assault

12

characterized by multiple aggravating factors, the defendant may be convicted of multiple distinct charges of aggravated sexual assault for a unitary act of sexual assault.

¶ 30. In that regard, this statute is on all fours with the aggravated-domestic-assault statute, which this Court has held does not authorize multiple charges of aggravated domestic assault on the basis of a unitary act of domestic assault. See State v. Ritter, 167 Vt. 632, 633, 714 A.2d 624, 626 (1998) (mem.). In Ritter, we considered "whether the Legislature intended for a single act of domestic assault, committed under two separate aggravating circumstances, to be punished by two separate convictions of second-degree aggravated domestic assault." Id. If you swap in "sexual assault" for "domestic assault," that is the precise question at issue in this case. The aggravated-domestic-assault statute in Ritter, analogous to the aggravated-sexual-assault statute here, provided, "A person commits the crime of second degree aggravated domestic assault if the person" commits a domestic assault causing bodily injury when that assault constitutes a violation of conditions of a criminal court order or commits a second or subsequent offense of domestic assault. 13 V.S.A. § 1044(a) (1998) (current version at 13 V.S.A. § 1044 (2021)).

¶ 31. In analyzing the Legislature's intent, we acknowledged that each potentially aggravating circumstance included an element not included in the other, and that accordingly a rote application of the Blockburger test created a presumption that the offenses were not the same. Ritter, 167 Vt. at 633, 714 A.2d at 625. However, we recognized that the language and structure of the statute created a clear indication of contrary legislative intent, and that authorizing multiple convictions for a single act of domestic assault in multiple aggravating circumstances would lead to absurd results:

> The aggravating factors in § 1044(a) allow courts to impose a greater penalty when the underlying crime of domestic assault is committed. Thus, domestic assault committed under one of the two enumerated aggravating circumstances becomes second-degree aggravated domestic assault, and the maximum authorized

13

> punishment is significantly more severe than domestic assault under
> § 1042. The maximum penalty increases from imprisonment of not
> more than one year and a $5,000 fine for domestic assault, § 1042,
> to imprisonment of not more than five years and a $10,000 fine for
> second-degree aggravated domestic assault, § 1044(b).
>
> Defendant in the instant case did not commit multiple acts of
> domestic assault involving separate occurrences or separate victims.
> Absent the aggravating factors, defendant's unitary act against a
> single victim could support only a single conviction of domestic
> assault. Because defendant's unitary act occurred under aggravating
> circumstances, it is punishable as second-degree aggravated
> domestic assault rather than domestic assault. We do not agree,
> however, that because the domestic assault occurred under two
> aggravating circumstances, it suddenly becomes punishable as two
> counts of second-degree aggravated domestic assault, permitting an
> additional sentence of up to five years imprisonment and up to a
> $10,000 fine.

Id. at 633, 714 A.2d at 626.

¶ 32. I cannot reconcile the majority's approach in this case with Ritter. It assumes that, while an individual who commits a sexual assault without aggravating circumstances may be charged with and convicted of only a single act of sexual assault, an individual who commits a single act of sexual assault under two truly distinct aggravating circumstances may be charged for two acts of aggravated sexual assault—precisely the reasoning this Court rejected in an analogous context in Ritter. The Court in Ritter noted the likelihood that in many cases both aggravating factors would apply, but its holding did not require such an overlap.

¶ 33. The State's efforts to distinguish Ritter are unpersuasive. The State contends that the fact that the distinct aggravating factors in the aggravated domestic assault statute were connected with an "or" creates a meaningful distinction. I see no meaningful difference between saying that a crime is elevated or aggravated if committed under "circumstance A or circumstance B" and saying that a crime is elevated or aggravated if committed under "any one of these circumstances: A, B." In both cases, the Legislature has made it clear that any one of the listed aggravating circumstances is itself sufficient to subject the defendant to the greater

14

penalties associated with the aggravated offense. And the Legislature's use of the term "any one" in the aggravated sexual assault statute, combined with the fact that the statute does not include additional statutory sentencing consequences for sexual assaults committed under multiple aggravating circumstances, reinforces my understanding that the statute does not contemplate multiple charges and convictions for a single act of sexual assault committed under more than one aggravating circumstance.

¶ 34.   I urge the Legislature to take note. The implication of the majority's approach is that when the Legislature identifies in distinct statutory subsections multiple potential aggravating factors that can elevate an offense, whether it be domestic assault, sexual assault, or some other offense, unless it expressly states otherwise, the Legislature has thereby authorized multiple distinct charges, convictions, and sentences for a unitary act if more than one aggravating factor applies. See also State v. Nelson, 2020 VT 94, ¶ 1, __ Vt. __, 246 A.3d 937 (upholding multiple convictions for aggravated sexual assault based upon a single act of sexual assault). If my understanding of the statutes is wrong, and that is the Legislature's intent in these various statutory regimes, there is no need to act. If the Legislature intends otherwise, however, it has the means to provide clarity to the Court in future cases.

 

 

                                                      _____

                                                      Associate Justice