## State of Vermont v. Scott Simpson

[627 A.2d 346]

No. 91-443

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed April 30, 1993

*Jeffrey L. Amestoy*, Attorney General, and *Susan R. Harritt*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*Charles Martin* of *Martin & Paolini*, Barre, for Defendant-Appellant.

**Morse, J.** Defendant appeals from jury convictions for vehicular homicide and leaving the scene of an accident. See 23 V.S.A. §§ 1091(c), 1128(a) and (c). He argues that (1) the court erred by refusing to allow defendant's expert to testify that the accident would not have happened if the decedent had not been speeding; (2) his right to testify was chilled by the court's ruling that the State could impeach him with a comment he made about obtaining license plates that read "KILLER"; and (3) the court erroneously instructed the jury on the standard of care that defendant must have failed to meet for conviction of vehicular homicide.

The State concedes the third point and agrees that the § 1091(c) conviction must be reversed. The court's charge per-

mitted the jury to base the conviction on a civil negligence standard, contrary to this Court's recent decision that a conviction under § 1091(c) requires, at minimum, criminal negligence. See *State v. Beayon,* 158 Vt. 133, 136, 605 A.2d 527, 528 (1992). The parties disagree, however, on whether reversal of the § 1091(c) conviction requires reversal, or remand for resentencing, of the § 1128 hit-and-run conviction. We reverse the § 1091(c) conviction and remand the case for sentence reconsideration as to the § 1128 conviction.

According to an eyewitness who testified at trial, the decedent was killed when he lost control of his vehicle and struck a telephone pole while attempting to avoid a collision with defendant, who had pulled out of a side road onto the highway without stopping. After the collision, defendant continued up the road, turned around, and drove slowly back by the scene of the accident. He stopped at a nearby residence and asked the occupant to call the police, and then left the scene without identifying himself or rendering assistance. Later, when the police interviewed defendant at his home, he first denied that his car had been driven that day and then denied having driven it himself; eventually, he admitted that he had driven the car.

Defendant's principal defense at trial was that the decedent had caused the accident by driving at an excessive speed. The posted speed limit on that stretch of the highway was 50 mph, although there was an advisory sign suggesting a speed of 40 mph. The State's expert testified that the decedent had been driving at 58 mph at the time of the accident, that the advisory speed limit was not significant in this instance because the decedent was an experienced driver familiar with the road, and that the critical speed for that curve—the speed beyond which a vehicle would leave the road—was 65 mph. He further testified that he used no specialized skills in negotiating the curve in a police cruiser at speeds of 50, 55, 60 and 65 mph. He also testified that, assuming the decedent had been traveling at 58 mph, defendant could have seen the decedent's vehicle for approximately 26 seconds from the stop sign where he entered the highway. According to the State's expert, the accident was caused by defendant pulling out directly in front of the decedent.

Defendant's expert estimated that the decedent had been traveling at 62 mph. He further testified that the speed of the

decedent's car "absolutely played a part in this accident." According to defendant's expert, there were two causes of the accident: "One, [defendant] did—probably did not negotiate the stop sign correctly. And two, [the decedent] was speeding." Defendant also sought to elicit an opinion from his expert that the accident would not have occurred if the decedent had not been speeding, but the court excluded it as speculation. The jury returned guilty verdicts on both charges.

When an accident results in death, the crimes charged in this case carry identical prison terms: "not less than one year nor more than 15 years." 23 V.S.A. §§ 1091(c), 1128(c). At sentencing, the parties informed the judge that they had agreed to a joint recommendation of 4–10 years, to run concurrently. The court did not accept the agreement because it was conditioned on defendant's waiver of appeal. At the conclusion of the hearing, however, the court sentenced defendant to the same sentence recommended by the parties.

The primary issue on appeal is what effect reversal of the vehicular homicide conviction has on the hit-and-run conviction. The court gave a separate instruction on the hit-and-run charge, defining its distinct elements. The court instructed the jury that it must find defendant had actual knowledge that he caused or was involved in an accident. The court then defined both "involved in" and "caused." The court concluded by stating that the jury should find defendant not guilty if "the acts of the victim set in flow the events . . . leading to the accident" so that the accident would not have happened otherwise.

Defendant argues that the hit-and-run conviction must be reversed also because the court's charge made guilt of the hit-and-run charge dependent on a finding of guilt on the vehicular homicide charge. Apparently, defendant is contending that the court's instruction requiring that his actions be a proximate cause of the accident negated the term "involved in." We are not persuaded by this argument.

Section 1128 imposes certain duties on a person "who has caused or is involved in an accident." The duties apply not only to persons with actual knowledge that their conduct was the proximate cause of the accident, but also to persons with actual knowledge that their actions were a precipitating or contributing factor to the accident. Indeed, courts interpreting the

term "involved in" have concluded that a person can be involved in an accident without being its legal cause. See, e.g., *People v. Bammes*, 71 Cal. Rptr. 415, 419 (Ct. App. 1968) (assuming "real cause" of accident was decedent's unnecessary attempt to pass defendant after she pulled out in front of decedent, defendant was nevertheless "involved" in accident because her pulling into intersection precipitated some reaction on part of decedent); *People v. Kerger*, 548 N.E.2d 36, 39 (Ill. App. Ct. 1989) ("it is not necessary to determine, for purposes of deciding whether defendant was involved in a motor vehicle accident, whether defendant caused or was at fault for the accident"); *State v. Carpenter*, 334 N.W.2d 137, 141 (Iowa 1983) (statute imposing duty on persons "involved in" an accident "does not require that the driver's conduct be a proximate cause of the accident").

■ This interpretation of the term "involved in" makes sense in light of the purposes of our hit-and-run statute—"to prohibit drivers of motor vehicles from seeking to evade civil or criminal liability by escaping before their identity can be established, and from leaving persons injured, abandoned and destitute of first aid or medical care." *State v. Sidway*, 139 Vt. 480, 484, 431 A.2d 1237, 1239 (1981). In addition to increasing the likelihood that injured persons will receive prompt aid, the statute facilitates a determination of civil or criminal culpability by requiring that persons whose actions precipitated or contributed to the accident remain at the scene. Whether the judicial system ultimately determines that a defendant legally caused the accident or is guilty of vehicular homicide is not dispositive of whether the defendant "caused or was involved in" an accident for purposes of § 1128. See *Bammes*, 71 Cal. Rptr. at 419–20 ("fact that the jury also found defendant not guilty on the manslaughter charges is not inconsistent with their finding that she was 'involved'" in the accident).

Even if we concluded that the court's instruction in the present case made the hit-and-run conviction dependent on a finding that defendant legally caused the accident, that conclusion would not suggest that the hit-and-run conviction was dependent on the vehicular homicide conviction. The jury convicted defendant on both counts, indicating that it concluded that defendant caused the accident. Defendant has never challenged

any of the court's instructions on causation with regard to either crime, and the reason for reversal of the vehicular homicide conviction—an erroneous standard-of-care instruction—has nothing to do with causation. The court's charge, when read as a whole, instructs the jury that it should acquit defendant of leaving the scene if his conduct was not a substantial cause of the accident. The fact that the jury may have interpreted the charge to require more of a showing regarding causation than is required under § 1128 hardly suggests that the hit-and-run conviction cannot stand on its own. If anything, defendant was given the benefit of the doubt on the instruction, and the jury still convicted him.

Nor do defendant's first two claims of error have an impact on the hit-and-run conviction. In light of the overwhelming evidence that he was "involved in" the accident, it's difficult to see how defendant might have benefited from the court allowing his expert to testify that the accident would not have happened had the decedent not been speeding. Indeed, that very same expert testified that defendant's failure to stop was one of the actions that caused the accident. Finally, defendant has not suggested how the court's ruling on the "KILLER" plates comment, even if error, prejudiced his case. It is doubtful his testimony could have shown that he was not "involved in" the accident. Further, defendant never suggested at trial that his decision not to testify hinged on whether he would be impeached with that comment. To the contrary, on-the-record colloquies between defense counsel and the court suggest that defendant's decision not to testify was unrelated to the court's decision to allow the State to impeach him with the comment.

██ The final issue remaining is whether it is appropriate to remand the case for sentence reconsideration for the hit-and-run conviction. Generally, when less than all of the convictions in a case are reversed on appeal, a remand for resentencing on the affirmed convictions is not required if separate sentences were imposed for each offense. *People v. Poe*, 459 N.E.2d 667, 671 (Ill. App. Ct. 1984). If separate sentences were imposed, a remand for resentencing is appropriate only when the convictions or sentences for the reversed convictions appear to have influenced the trial court's sentencing regarding the affirmed convictions. *People v. Alcazar*, 527 N.E.2d 325, 332 (Ill. App. Ct.

1988). The imposition of separate concurrent sentences by the trial court does not negate the possibility of influence, *id.*, but a reviewing court cannot conclude, based solely on the trial court's simultaneous imposition of separate concurrent sentences for multiple convictions, that the sentence for one offense was influenced by the conviction or sentence for the other offense. *Poe*, 459 N.E.2d at 671; see *People v. Payne*, 456 N.E.2d 44, 50 (Ill. 1983) (remand for resentencing unnecessary where record does not indicate that the court was influenced by armed-violence conviction in imposing sentences for other convictions affirmed on appeal).

In the present case, the court heard testimony at the sentencing hearing regarding defendant's "KILLER" plates comment. The State then pointed out that defendant's license was under suspension at the time of the accident; that there were no mitigating factors with regard to layout of the road; that defendant initially had denied driving the car; that defendant's conduct indicated he felt no remorse for the victim; and that defendant had violated conditions of release since the accident. Defendant represented that the source of the "KILLER" plates comment was not defendant but rather some schoolmates of his children. Defendant emphasized that the decedent's actions contributed to the accident and should be considered as a mitigating factor. Citing prior examples of sentences for the same offenses from 1986 to 1990, defendant recommended that he be sentenced to 2–6 years. The court noted that it was making its decision based on the arguments of counsel and the presentence report, and imposed a sentence of 4–10 years to serve. The court stated that it was imposing that sentence because of the evident carelessness of defendant. The court also referred to prior convictions.

The record of the sentencing hearing does not directly show that the vehicular homicide conviction influenced the court's sentence for the hit-and-run conviction. Rather, the record indicates a lack of focus on the hit-and-run conviction. Only in response to defense counsel's inquiry did the court even note that there would be equal concurrent sentences for the two convictions. We realize that both offenses in this case carry identical terms of imprisonment, and that most of the factors considered by the court could have been viewed with regard to either crime. Nonetheless, because both crimes arose out of one

transaction, and because counsel and the court seemed to focus solely on the vehicular homicide conviction, we use our discretion to remand the case for resentencing regarding the hit-and-run conviction. Upon remand, the trial court may impose the same or a lighter sentence for the § 1128 violation.

*The conviction based on a violation of 23 V.S.A. § 1091(c) is reversed. The conviction based on a violation of 23 V.S.A. § 1128 is affirmed, and the case is remanded for sentence reconsideration.*