**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

**No. 15-4808**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

     v.

GERMAN DE JESUS VENTURA, a/k/a Chino, a/k/a Chalo, a/k/a Pancho, a/k/a Chaco, a/k/a Oscar,

        Defendant – Appellant.

---

Appeal from the United States District Court for the District of Maryland, at Baltimore. William D. Quarles Jr., District Judge. (1:10-cr-00770-WDQ-1)

---

Argued: May 9, 2017                        Decided: July 18, 2017

---

Before GREGORY, Chief Judge, and KING and KEENAN, Circuit Judges.

---

Affirmed by published opinion. Judge King wrote the opinion, in which Chief Judge Gregory and Judge Keenan joined.

---

**ARGUED**: Erek Lawrence Barron, WHITEFORD, TAYLOR & PRESTON, LLP, Bethesda, Maryland, for Appellant. Rachel Miller Yasser, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF**: Rod J. Rosenstein, United States Attorney, P. Michael Cunningham, Assistant United States Attorney, Melanie Goldberg, Student Law Clerk, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

---

KING, Circuit Judge:

Appellant German de Jesus Ventura and his co-defendant, Kevin Garcia Fuertes, ran several brothels in Annapolis, Maryland. Eventually, their seedy empire was exposed, resulting in the prosecution of Ventura and Fuertes in the District of Maryland. In a seven-count indictment, Ventura was charged with sex trafficking and related offenses. After a jury found Ventura guilty of all seven charges, the district court sentenced him to 420 months in prison. Ventura appealed, and we vacated one of his seven convictions, plus the sentence imposed on the vacated conviction. We therefore remanded to the district court for resentencing. *See United States v. Fuertes*, 805 F.3d 485 (4th Cir. 2015) (the "First Decision").[1] On remand, the court resentenced Ventura to an aggregate of 420 months. Ventura has now appealed the new sentence and, as explained below, we affirm.

I.

A.

With the help of Fuertes, Ventura established and operated a chain of brothels in Annapolis, Maryland. In early 2008, Ventura was looking to expand and assume control of other brothels in the area. To that end, he was threatening violence to other pimps. For example, in March 2008, Ventura told an associate about another pimp who had been causing him trouble — Ricardo Humberto "el Pelon" Rivas Ramirez. On September 13,

---

[1] Co-defendant Fuertes was charged in the indictment with three offenses, and he was convicted on each of them. His convictions and sentences were all affirmed in the First Decision. The prosecution of Fuertes is unrelated to this appeal.

2

2008, Ramirez was murdered. The Annapolis Police Department (the "APD") learned that, prior to the murder, Ramirez "had received threatening phone calls from two different phone numbers." *See Fuertes*, 805 F.3d at 490–91. Shortly thereafter, on September 24, 2008, Fuertes was arrested by the APD after being stopped for a traffic violation. That arrest revealed that Fuertes's cell phone number was associated with the threatening calls made to Ramirez. When arrested again by the APD on September 25, 2008, Fuertes had in his possession the cell phone from which the threatening calls to Ramirez had been made. Also in his possession were a handful of homemade business cards that advertised prostitution services.

After his September 25 arrest, Fuertes consented to a search of his home. During the search, the APD uncovered several items indicating that the home was a brothel. The search also turned up an address book that included an entry connecting the second phone number associated with Ramirez's threatening calls to a man named "Pancho." Further investigation revealed that Ventura, also known as "Pancho" and "Chino," was the subscriber of the second phone number.

With suspicions aroused, the APD continued to monitor the activities of Ventura and Fuertes. Their monitoring revealed that Ventura operated brothels in Annapolis and that his enterprise extended to Easton, Maryland, and Portsmouth, Virginia. In fact, the APD learned some operational details of Ventura's venture:

> Ventura arranged for prostitutes to work in the brothels from Monday through Sunday. Typically, the women communicated with Ventura by phone, then traveled by bus to Washington, D.C., where they met Ventura, or one of his employees, and drove to the brothel where they worked for the week. The prostitutes provided fifteen minutes of sex for thirty dollars,

3

and were paid half of the gross receipts, less expenses for food, hygiene products, and other expenses of the trade.

*See Fuertes*, 805 F.3d at 491. In addition to their pay, the prostitutes working for Ventura also received his wrath. One woman, Rebecca Duenas Franco, was compelled by Ventura "to engage in prostitution by violence and threats of violence, and [he] held her against her will. . . . On one occasion, when Duenas refused to have sex . . . Ventura beat her with a belt." *Id.* Duenas — unlike other employees — was not financially compensated for her services. Ventura's violence also extended to his competitors, other employees, and those of whom he was suspicious. For example, according to Duenas, "Ventura threatened competitor pimps," "celebrat[ed] Ramirez's murder," "assaulted a male employee who threatened to go to the police," and "beat a prostitute who he believed had sent people to rob one of his brothels." *Id.* at 492.

On March 25, 2009, Fuertes was again arrested by the APD. This time the APD found him in an Annapolis apartment littered with "evidence that the residence was being used as a brothel." *See Fuertes*, 805 F.3d at 492. A search of his person resulted in the seizure of a paper on which the phone number associated with Ventura and the threats to Ramirez was written.

When Ventura was arrested by the APD on September 24, 2009, he possessed two cell phones, but nevertheless claimed not to have a phone number. He explained that neither phone was his — "he had found one cell phone at the mall" and "he was borrowing the other from a taxicab driver whose name he did not know." *See Fuertes*,

4

805 F.3d at 492. One of the phones, however, carried the phone number associated with Ventura and the threats to Ramirez.

Several months later — on February 17, 2010 — a 911 call about a robbery was made from yet another phone number associated with Ventura and from which other area pimps had been receiving threatening calls. The robbery — which occurred at one of Ventura's brothels — had been committed by a former employee of Ventura. That employee, who had worked as a doorman, "testified at trial that he committed the robbery because he had not been paid for his work at the brothel." *See Fuertes*, 805 F.3d at 492.

The APD subsequently learned that Ventura had opened a brothel in Easton, Maryland. During the execution of a search warrant at that brothel on July 7, 2010, the APD arrested two more of Ventura's employees. As the investigation into Ventura's illicit enterprises continued, the APD ascertained, on August 2, 2010, "that Ventura was transporting a prostitute from Maryland to a brothel in [Virginia]." *See Fuertes*, 805 F.3d at 492.

Finally, on November 3, 2010, "several men believed to be operating at Ventura's behest seriously assaulted competitor-pimp Hector Fabian Avila." *See Fuertes*, 805 F.3d at 492. At this point, the investigation came to a head, and the APD arrested Ventura at his home in Capitol Heights, Maryland, on November 15, 2010. He has been in custody since then.

B.

On November 29, 2011, Ventura was charged in a superseding indictment by the grand jury in Baltimore with seven offenses:

5

- Count One — Conspiracy to commit interstate prostitution, in violation of 18 U.S.C. § 371;

- Count Two — Interstate transportation in furtherance of prostitution offenses, in violation of 18 U.S.C. § 2421;

- Count Three — Coercion and inducement of individuals to travel in interstate commerce for prostitution and illegal sexual activity, in violation of 18 U.S.C. § 2422(a);

- Count Four — Interstate transportation in furtherance of prostitution offenses, in violation of 18 U.S.C. § 2421;

- Count Five — Interstate transportation in furtherance of prostitution offenses, in violation of 18 U.S.C. § 2421;

- Count Six — Sex trafficking by force, fraud, and coercion, in violation of 18 U.S.C. § 1591(a); and

- Count Seven — Possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c).

*See* J.A. 24-38.[2]  As recited in the First Decision, the jury in the District of Maryland found Ventura guilty of all seven counts.  After denying Ventura's post-trial motion for judgments of acquittal or a new trial, the district court sentenced Ventura to an aggregate of 420 months in prison, including the following:

- 60 months on Count One;

- 120 months on Count Two, concurrent with sentence on Count One;

- 240 months on Count Three, concurrent with sentences on Counts One and Two;

- 120 months on Counts Four and Five, concurrent with sentences on Counts One through Three;

---

[2] Citations herein to "J.A. ___" refer to the contents of the Joint Appendix filed by the parties in this appeal.

6

- 360 months on Count Six, concurrent with sentences on Counts One through Five; and

- 60 months on Count Seven, consecutive to sentences on Counts One through Six.

*See* J.A. 100.

C.

In the First Decision, we rejected Ventura's arguments relating to the district court's admission of "evidence of violence and threats of violence against competitor pimps" and challenging the admission of expert testimony relating to physical injuries. *See Fuertes*, 805 F.3d at 494, 497. We found meritorious, however, his contention that the sentencing court had erred in denying judgment of acquittal on Count Seven. Reviewing for plain error, the First Decision concluded that "the conviction under 18 U.S.C. § 924(c) for possession and use of a firearm in relation to a crime of violence was erroneous because . . . sex trafficking by force, fraud, or coercion . . . is not categorically a crime of violence." *Id.* at 490. We added that "'[five] years of a man's life is not a trifling thing,'" and "[w]e simply cannot 'require a man to serve [five] undeserved years in prison when [we] know[ ] that the sentence is improper.'" *Id.* at 501 (quoting *United States v. Ford*, 88 F.3d 1350, 1356 (4th Cir. 1996)) (third through fifth alterations in original). Accordingly, we vacated Ventura's conviction on Count Seven, "remand[ing] for entry of judgment of acquittal on that count and resentencing." *Id.*

D.

On remand, and prior to the resentencing hearing, the district court secured sentencing memoranda from the Government and Ventura. On December 8, 2015, the

7

court conducted its resentencing hearing. During that hearing, the court explained that — after entering judgment of acquittal on Count Seven — Ventura's total offense level was 42, resulting in an "advisory sentencing guidelines range [of] 360 months to life." *See* J.A. 183.

The district court then recounted its prior sentencing findings "involving [Ventura's] violence, which included the testimony of Sandra Flores about the gasoline poured on her door, [and] phone threats to do away with her and her family." *See* J.A. 183. The court explained that several witnesses had testified about Ventura's possession of firearms:

> Mr. Amparo also testified about the gun in the possession of Mr. Ventura in the brothel and in several other places. Mr. Campos also testified about Mr. Ventura's possession of the firearm, as did Carlos Ascencio and Mr. Ferman Martinez Hernandez, who placed Mr. Ventura in possession of the shotgun.

*Id.* Those factual findings led the court to conclude "that a substantial sentence is appropriate here." *Id.* at 184.

Before announcing its new sentence, the district court also alluded to "the evidence of [Ventura's] behavior while serving his sentence summarized [in] the Government's November 27, 2015, sentencing letter." *See* J.A. 184. The Government had therein explained that, in the two years between the first sentencing hearing on November 26, 2013, and the resentencing hearing on December 8, 2015, Ventura was in custody in the Bureau of Prisons (the "BOP"). During that period of custody, Ventura had received five disciplinary actions, including one for threatening a BOP officer. Considering Ventura's behavior during his incarceration — along with his "high-level

8

involvement in this tawdry enterprise [and] his use of violence in an effort to monopolize prostitution" — the court decided to impose a sentence on the lower end of the Guidelines range. *Id.* at 184.

The district court then resentenced Ventura to an aggregate of 420 months in prison — well within the Guidelines range of 360 months to life. Specifically, the court imposed the following sentences:

- 60 months on Count One;

- 120 months on Count Two, concurrent with sentence on Count One;

- 240 months on Count Three, to run concurrent with sentences on Counts One and Two;

- 120 months on Counts Four and Five to run concurrent with sentences on Counts One through Three; and

- 420 months on Count Six to run concurrent with sentences on Counts One through Five.

*See* J.A. 190. Those sentences in the aggregate, the court recited, "are sufficient but not greater than necessary to reflect the seriousness of the offenses, provide just punishment and adequate deterrence, promote respect for the law, and protect the public from further crimes of [Ventura]." *Id.* at 184.

Ventura has again appealed, challenging the 420 month sentence imposed at resentencing. We possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

9

II.

When asked to review the reasonableness of a sentence, we employ an abuse of discretion standard. *See United States v. Susi*, 674 F.3d 278, 282 (4th Cir. 2012). In so doing, we first consider whether the sentencing court procedurally erred by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* (internal quotation marks omitted). In the absence of a significant procedural error, we proceed to assess "the substantive reasonableness of the sentence imposed, taking into account the totality of the circumstances." *Id.* (internal quotation marks omitted). To the extent an appeal concerns the sentencing court's interpretation of an appeals court mandate requiring a resentencing, our review is de novo. *Id.* at 283.

III.

Ventura levies a three-pronged attack on the sentence imposed by the district court at his resentencing. First, he contends that the court contravened the mandate rule. Second, he claims the court acted vindictively in again sentencing him to 420 months. Third, he argues that his new sentence is unreasonable because the court considered facts related to the Count Seven conviction that has been vacated, as well as conduct during his incarceration with the BOP. As explained below, we reject each of those contentions.

10

A.

To start, Ventura argues that, by recalculating the various sentences on those convictions that were not vacated, the district court ran afoul of our mandate in the First Decision. According to Ventura, the court's recalculation as to Count Six was an "unwarranted attempt to make up for the 60 month loss on Count Seven." *See* Opening Br. 13. In his view, the only viable option for the court was to strike his sentence on Count Seven and leave intact his six sentences on Counts One through Six, resulting in a 60 month reduction of the aggregate term of his imprisonment. We disagree, and conclude that the court did not contravene our mandate.

When a higher court issues a mandate, it "is controlling as to matters within its compass," and it is "indisputable that a lower court generally is bound to carry the mandate of the upper court into execution." *See United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) (internal quotation marks omitted). That legal principle — known as the mandate rule — bars a lower court from "consider[ing] the questions which the mandate laid at rest." *Id.* (internal quotation marks omitted). On a remand for resentencing, however, the lower court "may consider the issue de novo, entertaining any relevant evidence on that issue that it could have heard at the first hearing." *Id.* at 67 (internal quotation marks omitted).

Another principle of significance that we have employed in resentencing situations — and that has been adopted by several of our sister circuits — is the "sentencing package doctrine." *See, e.g.*, *United States v. Smith*, 115 F.3d 241, 245 (4th Cir. 1997). Pursuant to that doctrine, when a court of appeals "vacate[s] a sentence and remand[s] for

11

resentencing, the sentence becomes void in its entirety and the district court is free to revisit any rulings it made at the initial sentencing." *See United States v. Yost*, 185 F.3d 1178, 1181 (11th Cir. 1999), *cited with approval in United States v. Floyd*, 178 F. App'x 308, 310-11 (4th Cir. 2006) (per curiam); *see also United States v. Bermudez*, 82 F.3d 548, 550 (2d Cir. 1996) ("[A] sentencing judge could, on remand, increase the sentence on a specific count where the original sentence was imposed as part of a package that included a mandatory consecutive sentence which was subsequently found to be invalid." (internal quotation marks omitted)). The sentencing package doctrine accounts for the holistic approach that a district court should employ when sentencing a defendant convicted of multiple offenses. *See, e.g.*, *United States v. Fowler*, 749 F.3d 1010, 1015 (11th Cir. 2014) ("[S]entencing on multiple counts is an inherently interrelated, interconnected, and holistic process which requires a court to craft an overall sentence . . . ."); *United States v. Shue*, 825 F.2d 1111, 1114 (7th Cir. 1987) ("When a defendant is convicted of more than one count of a multicount indictment, the district court is likely to fashion a sentencing package in which sentences on individual counts are interdependent."). We agree with our sister circuits that "when a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan," and that if some counts are vacated, "the judge should be free to review the efficacy of what remains in light of the original plan." *United States v. Townsend*, 178 F.3d 558, 567 (D.C. Cir. 1999) (internal quotation marks omitted). We therefore reassert

our adoption of the sentencing package doctrine and conclude that it controls the result in this case.

In the First Decision, we simply "remand[ed] for entry of judgment of acquittal on [Count Seven] and resentencing." *See* 805 F.3d at 501. Our remand did not — as Ventura suggests — automatically entitle him to a 60 month reduction in his aggregate sentence merely because his conviction on Count Seven was vacated. Pursuant to the sentencing package doctrine, the mandate left ample room for the district court to recalculate the sentences related to Ventura's other six convictions that were not subject to vacatur. The court did not, therefore, exceed the boundaries of our mandate in the First Decision.

B.

Next, Ventura maintains that the district court vindictively increased his sentence on Count Six by 60 months. Vindictiveness is presumed, he explains, because the court increased that sentence from 360 months to 420 months. Even more, he alleges that "there was no objective information which would have justified the [court's] changed sentence." *See* Opening Br. 15. This challenge also fails, however, because Ventura did not receive an increase in his aggregate sentence.

As the Supreme Court has explained, due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *See North Carolina v. Pearce*, 395 U.S. 711, 725 (1969), *overruled on other grounds by Alabama v. Smith*, 490 U.S. 794 (1989). If a sentencing court increases a sentence on remand, "the reasons for the court doing so

13

must affirmatively appear." *See United States v. Williams*, 444 F.3d 250, 254 (4th Cir. 2006) (internal quotation marks omitted). If the trial court does not explain its reasons for a sentence increase, "a presumption arises that a greater sentence has been imposed for a vindictive purpose — a presumption that must be rebutted by objective information . . . justifying the increased sentence." *See Alabama*, 490 U.S. at 798-99 (internal quotation marks omitted) (omission in original). But such a presumption only arises if "there exists a reasonable likelihood . . . that the increase in sentence is the product of actual vindictiveness." *See Williams*, 444 F.3d at 254 (internal quotation marks omitted) (omission in original). If vindictiveness cannot be presumed, "the burden remains upon the defendant to prove actual vindictiveness." *See Alabama*, 490 U.S. at 799.

In 1992, in *United States v. Kincaid*, we explained that, to properly assess "whether a sentence violates *Pearce* and its progeny, we first ask whether the new sentence is actually harsher than that imposed prior to successful appeal." *See* 964 F.2d 325, 328 (4th Cir. 1992) (internal quotation marks omitted). If we determine that an increased sentence was imposed, we will then consider whether the defendant has demonstrated actual vindictiveness or a reasonable likelihood of actual vindictiveness. *See, e.g.*, *id.*

In this situation, the district court initially sentenced Ventura to an aggregate of 420 months in prison. On remand, the court resentenced him yet again to an aggregate of 420 months. Put simply, the court did not increase his aggregate term of imprisonment — it imposed the same term. Ventura argues, however, that the court imposed an

14

increased sentence because the sentence associated with Count Six was increased from 360 months to 420 months.

At bottom, Ventura asks us to assess his sentences under the so-called count-by-count approach — a methodology apparently employed in the Second and Eleventh Circuits. Under that approach, we would compare Ventura's aggregate sentence on the six counts that were undisturbed (360 months) with the aggregate sentence imposed on those same counts (420 months). *See, e.g.*, *United States v. Monaco*, 702 F.2d 860 (11th Cir. 1983); *United States v. Markus*, 603 F.2d 409 (2d Cir. 1979).

Our Court, however, does not adhere to the count-by-count approach. We have followed the aggregate package approach — the majority methodology utilized by at least six of our sister circuits.[3] *See United States v. Gray*, 852 F.2d 136, 138 & n.1 (4th Cir. 1988); *see also United States v. Campbell*, 106 F.3d 64, 68 (5th Cir. 1997) (citing *United States v. Sullivan*, 967 F.2d 370 (10th Cir. 1992); *Kelly v. Neubert*, 898 F.2d 15 (3d Cir. 1990); *United States v. Mancari*, 914 F.2d 1014 (7th Cir. 1990); *United States v. Pimienta-Redondo*, 874 F.2d 9 (1st Cir. 1989) (en banc); *United States v. Bay*, 820 F.2d 1511 (9th Cir. 1987)) (identifying courts of appeals employing aggregate package approach). Under that approach, as Judge Murnaghan explained in our *Gray* decision, a sentence is not problematic so long as "the ultimate sentence for one or more counts does

---

[3] The count-by-count approach and the aggregate package approach are closely related to the sentencing package doctrine. The sentencing package doctrine permits a sentencing court to refashion the entire sentencing package, and the count-by-count approach and the aggregate package approach may then be employed to an assessment of whether the aggregate sentence was increased on resentencing.

not exceed that given for all counts sentenced at the conclusion of the first trial." *See* 852 F.2d at 138; *see also Campbell*, 106 F.3d at 68 ("Under this approach, courts compare the total original sentence to the total sentence after resentencing. If the new sentence is greater than the original sentence, the new sentence is considered more severe.").

Applying the aggregate package approach in this appeal, Ventura's sentence was not increased. His initial sentence was 420 months in prison, and his second sentence is also 420 months. Put simply, on remand he was given the same — not an increased — sentence. Because Ventura did not receive an increased aggregate sentence, his attempt to establish a presumption of vindictiveness must fail.

## C.

Finally, Ventura wages a two-pronged attack against the reasonableness of his sentence. First, he argues that, on remand, the district court invaded the province of the jury by making and relying on its own factual findings with respect to the vacated Count Seven conviction to increase his sentence on Count Six. Second, he claims that the court improperly increased his sentence on Count Six by relying on his conduct during his custody with the BOP, resulting in an "inappropriate consideration of the factors under 18 U.S.C. § 3553(a)." *See* Opening Br. 9. We reject both those contentions.

Our review of the reasonableness of a sentence proceeds in two steps. We begin by reviewing the sentence for procedural error. As we have explained, "[a] district court commits a procedural error if it fails to properly calculate the Guidelines, treats the Guidelines as mandatory, fails to consider the statutory factors under 18 U.S.C. § 3553(a), bases a sentence on facts that are clearly erroneous, or fails to adequately

16

explain the sentence imposed." *See United States v. Layton*, 564 F.3d 330, 335-36 (4th Cir. 2009). If we find no procedural error, we then assess whether the sentence is substantively reasonable "in light of all relevant facts." *Id.* at 336 (internal quotation marks omitted).

Ventura does not label his contentions about the resentencing as either procedural or substantive. Because those contentions concern whether the district court should have considered certain facts or evidence in crafting Ventura's new sentence, we see them as procedural in nature. We will, however, address both steps of our reasonableness inquiry in relation to Ventura's appellate contentions.

1.

We begin by assessing whether the district court erred procedurally when it considered facts connected to Count Seven. We vacated Ventura's conviction on Count Seven for possession and use of a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), because we recognized that "sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. § 1591(a), is not categorically a crime of violence." *See Fuertes*, 805 F.3d at 490. Thus, according to Ventura, the sentencing court could not on remand "possibly [be] able to determine whether the jury found force, fraud, and/or coercion," and "there [was] no jury finding of firearm possession." *See* Opening Br. 17 (internal quotation marks omitted). By accounting for Ventura's violent conduct and alleged possession of firearms in crafting his sentence, Ventura continues, the court "tread[ed] on ground reserved for a jury." *Id.* at 18.

17

To the contrary, the Supreme Court has explained that, in sentencing, a district court is not barred from "tak[ing] account of factual matters not determined by a jury and to increase the sentence in consequence." *See Rita v. United States*, 551 U.S. 338, 352 (2007). Even more, we have concluded that "a district court may consider conduct of which a defendant has been acquitted if the conduct has nonetheless been proved by a preponderance of the evidence." *See United States v. Lawing*, 703 F.3d 229, 241 (4th Cir. 2012).

Accordingly, the district court was entitled to consider Ventura's violent conduct and possession of a firearm, despite such conduct and firearm possession being tertiary to his vacated conviction. As it recounted, the court had heard the trial evidence relating to Ventura's physical abuse of his employees — which included belt lashings and beatings — and covering his penchant for firearms. *See, e.g.*, J.A. 183. We are thus satisfied that the factual underpinnings of Count Seven were proved by a preponderance of the evidence and could be considered by the court in connection with its resentencing of Ventura.

2.

Finally, we must decide whether the district court was entitled to consider Ventura's conduct while he was incarcerated with the BOP and whether doing so amounted to a procedural error in the resentencing. Ventura again asserts that the court "engaged in its own fact-finding to determine post-sentencing conduct" and did so "[a]bsent any advice from the Guidelines, without statutory direction, and contrary to due process." *See* Opening Br. 23. He further argues that, during the resentencing

18

proceedings, the court was only entitled to consider his degree of rehabilitation if it was crafting a sentence that varied downward.

Again, we reject Ventura's claim that the district court erroneously found facts out of turn. To begin, the court reasonably accounted for Ventura's conduct while he was in the custody of the BOP. Indeed, pursuant to § 3661 of Title 18 of the United States Code,

> [n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offence which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

Relying on that explicit statutory provision, the Supreme Court in *Pepper v. United States* ruled that a resentencing court could account for and decrease a sentence based on the defendant's rehabilitation. *See* 562 U.S. 476 (2011). Predicated on the "wide discretion" a sentencing court may exercise with respect to the evidence it can consider at sentencing, the court in Ventura's resentencing did not act unreasonably in considering Ventura's conduct during his incarceration with the BOP. *See id.* at 480; *see also United States v. Stewart*, 686 F.3d 156, 164 (2d Cir. 2012) ("[T]he district court [is] required to resentence [a defendant] in light of the circumstances as they [stand] at the time of [her] resentencing. This principle applies to mitigating considerations with equal force as it applies to aggravating ones." (internal quotation marks and citations omitted) (alterations in original)).[4]

---

[4] If the district court had erred in considering Ventura's post-sentencing conduct while incarcerated, any such error would be harmless. As we have explained, "[a]
(Continued)

19

Furthermore, the district court was presented at resentencing with ample evidence that Ventura had been, among other things, involved in physical altercations and made threatening remarks to others while he was in prison. We are also satisfied that all the facts relied on by the court were established by a preponderance of the evidence, and the court was entitled in its discretion to consider them. As a result, the court did not err in taking account of Ventura's misdeeds while he was in custody with the BOP.

3.

Having identified no procedural problems, we turn to the substantive reasonableness of Ventura's resentence to 420 months in prison. In so doing, we consider "whether the totality of the circumstances shows that the district court did not abuse its discretion," keeping in mind that "a sentence located within a correctly calculated guidelines range is presumptively reasonable." *See United States v. Susi*, 674 F.3d 278, 289 (4th Cir. 2012) (internal quotation marks omitted). Because the advisory Guidelines range for Ventura's sentence was 360 months to life, his 420 month sentence is well within that range and is presumptively reasonable. The only contentions that Ventura presents on appeal in seeking to overcome that presumption are those we have herein rejected. As a result, the presumption of reasonableness remains intact. On the

---

sentencing error is harmless if the resulting sentence was not longer than that to which [the defendant] would otherwise be subject." *See United States v. Hargrove*, 701 F.3d 156, 161 (4th Cir. 2012) (second alteration in original) (internal quotation marks omitted). Ventura's 420 month sentence was well within the applicable Guidelines range of 360 months to life.

20

whole, the court properly considered the evidence and arguments presented, and the court appropriately exercised its discretion in resentencing Ventura. We are thus satisfied that the new sentence of 420 months is procedurally and substantively reasonable.

## IV.

Pursuant to the foregoing, we are satisfied to affirm the judgment of the district court.

*AFFIRMED*