NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2020 VT 82

No. 2019-047

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Washington Unit, |
| | Criminal Division |
| | |
| Jacob M. Rillo | March Term, 2020 |

Howard E. Van Benthuysen, J.

Thomas J. Donovan, Jr., Attorney General, and Paul A. Barkus, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and Joshua S. O'Hara, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Robinson, Eaton, Carroll and Cohen, JJ.

¶ 1.    **REIBER, C.J.**    Defendant appeals his conviction for selling or dispensing a regulated drug with death resulting, arguing that his guilty plea lacked a factual basis. We agree and reverse defendant's conviction and sentence for that count, and we remand to the trial court for resentencing on the remaining counts.

¶ 2.    The record shows the following undisputed facts. In February 2017, the State charged defendant with one count of selling or dispensing heroin and fentanyl, death resulting, 18 V.S.A. § 4250; one count of sale of heroin, id. § 4233(b)(2); and one count of sale of fentanyl, id. § 4234(b)(1) (2016).[*]    The State alleged that in August 2016 defendant provided heroin and

---

[*]    In 2017, after the incident at issue here, the Legislature enacted 18 V.S.A. § 4233a. See 2017, No. 62, § 4. Section 4233a(a) specifically prohibits knowingly and unlawfully selling or

fentanyl to a person, resulting in that person's death. The State also charged defendant with three additional counts of sale of heroin, id. § 4233(b)(2), based on sales in September and October 2016.

¶ 3.    Defendant and the State executed a plea agreement in which defendant would plead guilty to selling or dispensing heroin and fentanyl, death resulting, and to the three sales of heroin in September and October. The State agreed to dismiss the other charges. The agreement provided that the State would argue for a sentence of five to ten years to serve on each count, reserving defendant's right to argue for a lesser minimum sentence of two years on each count.

¶ 4.    Following a plea hearing in May 2018, the trial court accepted defendant's guilty pleas on all four counts. The court held a sentencing hearing in August 2018. The court sentenced defendant to five to ten years for the charge of selling or dispensing heroin and fentanyl, death resulting, and to four to ten years for each of the sale-of-heroin charges, all to be served concurrently. Defendant appealed.

¶ 5.    On appeal, defendant claims his conviction for selling or dispensing heroin and fentanyl, death resulting, should be reversed because his guilty plea lacked a factual basis. He also argues that if this Court reverses that conviction, we should remand for resentencing on the remaining counts. We address each argument in turn and state additional facts as needed.

I. Factual Basis

¶ 6.    We first address defendant's argument that his guilty plea lacked a factual basis. At the plea hearing, the trial court questioned defendant pursuant to Vermont Rule of Criminal Procedure 11(f) regarding the factual basis of the charges. Defendant ultimately admitted that he sold one bag of heroin laced with fentanyl to the decedent's girlfriend in August 2016. However, he denied knowing at the time of the sale that the heroin was mixed with fentanyl. He admitted

dispensing fentanyl. The Legislature also amended § 4234 to prohibit selling or dispensing stimulants, depressives, or narcotic drugs other than heroin, cocaine, and fentanyl. See 2017, No. 62, § 5.

2

that the decedent was present when defendant gave the substance to the girlfriend, and defendant knew at the time that "there was a danger that [the girlfriend] and [the decedent] would use it." Defendant admitted that the decedent did use it and it caused his death. Based on these statements, the trial court found that defendant's guilty plea on the charge of selling or dispensing heroin and fentanyl, death resulting, had a factual basis and accepted it.

¶ 7.     On appeal, defendant argues that there was an insufficient factual basis for this guilty plea because he did not admit to knowing he was dispensing fentanyl and he did not dispense the drug to the person who died, and therefore the plea did not satisfy the requirements of Vermont Rule of Criminal Procedure 11(f). The State contends that the plea colloquy was sufficient because (1) defendant admitted to knowingly selling or dispensing a regulated drug, and the State was not "required to establish . . . that Defendant knew and understood the chemical composition of the compounds" in the drug at the time he dispensed them; and (2) defendant admitted to selling or dispensing the regulated drug to both decedent and decedent's girlfriend. As explained below, we agree with defendant that there was no factual basis for his guilty plea because he did not admit to knowingly selling or dispensing fentanyl. We do not reach defendant's argument that he did not dispense the drug to the person who died.

¶ 8.     "[T]he standard for reviewing Rule 11(f) challenges is the same in a direct appeal as in a [post-conviction relief] proceeding." State v. Bowen, 2018 VT 87, ¶ 10, 208 Vt. 164, 195 A.3d 361. "In [post-conviction relief] proceedings, usually a petitioner must show, by a preponderance of the evidence, that fundamental errors rendered [the] conviction defective." Id. ¶ 7 (quotation omitted). But no showing of resulting prejudice is required to prevail on a Rule 11(f) challenge "because a defendant's understanding of the elements of an offense as they relate to the facts goes directly to the voluntariness of [the] plea." Id. (quotation omitted).

¶ 9.     Vermont Rule of Criminal Procedure 11(f) requires the trial court to determine if there is an adequate factual basis for a defendant's plea before entering judgment. See V.R.Cr.P.

11(f) ("Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."). This inquiry is necessary to ensure the plea is voluntary. In re Gabree, 2017 VT 84, ¶ 9, 205 Vt. 478, 176 A.3d 1113 ("By making this [Rule 11(f)] inquiry, the court ensures that a defendant's plea is truly voluntary and that a reviewing court has the ability to review the record."); In re Bridger, 2017 VT 79, ¶ 11, 205 Vt. 380, 176 A.3d 489 ("The requirement of Rule 11(f) involves an understanding by the defendant that the conduct admitted violates the law explained to him by the court. Absent this, no matter how perfectly the other parts of Rule 11 have been observed, we cannot find a voluntary plea." (quotation and alteration omitted)).

¶ 10.    "[A]n adequate factual basis sufficient to demonstrate voluntariness must consist of some recitation on the record of the facts underlying the charge and some admission by the defendant to those facts." Bridger, 2017 VT 79, ¶ 21 (quotation marks omitted). "There is no particular formula to satisfy this standard. . . .  But a defendant must, in some manner, personally admit to the factual basis for the charges." Gabree, 2017 VT 84, ¶ 10; see also State v. Yates, 169 Vt. 20, 24, 726 A.2d 483, 486 (1999) ("[T]he factual basis for the plea may consist only of facts that defendant has admitted during the proceedings at which the plea is entered."). "By ensuring, at the least, that the defendant personally admits to facts relating to the elements of the offense, the court exposes the defendant's understanding of the factual basis for each element on the record . . . ." Bridger, 2017 VT 79, ¶ 22. This "facilitates the court's understanding of the facts and provides subsequent courts with the opportunity to review the record to establish that the defendant's plea was truly voluntary." Id.

¶ 11.    Here the State charged in the information that defendant "knowingly and unlawfully sold or dispensed HEROIN, a regulated drug, and FENTANYL, a regulated drug, which then proximately resulted in the death of a person," in violation of 18 V.S.A. § 4250. See id. § 4250(a) ("If the death of a person results from the selling or dispensing of a regulated drug to

4

the person in violation of this chapter, the person convicted of the violation shall be imprisoned not less than two years nor more than 20 years."); see also id. § 4233(b) (prohibiting knowingly and unlawfully selling or dispensing heroin); id. § 4234(b) (2016) (prohibiting knowingly and unlawfully selling or dispensing depressant, stimulant, and narcotic drugs other than heroin or cocaine). Given the State's use of the word "and" in the information, part of the act providing the factual basis for the charge was that defendant knowingly sold or dispensed fentanyl. See V.R.Cr.P. 7(b) ("[T]he information shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged."); see also State v. Kolibas, 2012 VT 37, ¶ 14, 191 Vt. 474, 48 A.3d 610 ("The purpose of a charging document is to set forth charges with such particularity as will reasonably indicate the exact offense the accused is charged with, and will enable him to make intelligent preparation for his defense." (quotation omitted)). Thus, the plea lacked a factual basis here unless defendant admitted to knowing that the drug he provided contained fentanyl. He did not. Because defendant did not admit that he knew at the time of the offense that the drug contained fentanyl, there was no factual basis for the plea and the trial court erred in accepting the plea. See V.R.Cr.P. 11(f).

¶ 12. The State contends that defendant did admit to knowingly providing fentanyl because defendant admitted that at the time of the hearing he knew the drug had contained fentanyl. This reasoning is incorrect. The "knowing" element of the alleged crime required proof that defendant knew the drug contained fentanyl at the time he committed the crime. See State v. Hanson, 141 Vt. 228, 232, 446 A.2d 372, 374 (1982) ("Unless expressly provided by the legislature, . . . a crime is composed of an act and an intent, which concur at a point in time."); 1 W. LaFave, Substantive Criminal Law § 6.3(a) (3d ed.) ("With those crimes which require some mental fault (whether intention, knowledge, recklessness, or negligence) in addition to an act or omission, it is a basic premise of Anglo-American criminal law that the physical conduct and the state of mind must concur."). It is irrelevant to the crime charged that defendant later knew, in

5

May 2018, that the drug he provided in August 2016 contained fentanyl. His admission to that later knowledge is thus insufficient to establish a factual basis for the "knowing" element of the alleged crime.

¶ 13. Accordingly, we reverse defendant's conviction for selling or dispensing heroin and fentanyl, death resulting, and remand for further proceedings on this charge. Because we reverse on this basis, we do not reach defendant's other argument challenging the sufficiency of his plea.

## II. Sentencing

¶ 14. We turn next to defendant's argument regarding resentencing. At the sentencing hearing, the trial court addressed defendant's drug addiction and explained to defendant that the goals of sentencing include rehabilitation, deterrence, and punishment. The court then stated:

> [D]eath is the final sentence. Loss of freedom, which is all that a court can impose upon you, is a far less onerous burden than death. And here, the product that you dispensed to [the decedent] . . . led directly to his death. . . .
>
> [O]ne thing you said is hard to believe, and that is you'd never imagined this would all happen. There are generally only three outcomes in an opiate addiction. One of which is the unfortunate outcome that befell [the decedent]. Another one is the walk you're about to make, incarceration. The third outcome is the one that you may have started on, which is sobriety and a fervent desire that others not follow in your footsteps.
>
> . . . .
>
> This plea agreement . . . recognizes the fact that you were not a dealer in the sense of profiting from the misery of others. But . . . you were the retail distributor at the end of a very long sewer pipe spewing this crap, this garbage, out into the community. . . . [W]ithout you folks at the end of this sewer pipe, this poison has a harder time getting into the community.
>
> . . . .
>
> [Y]ou were being used . . . by some completely, totally unscrupulous people, the psychopaths [a witness] talked about. People who don't care one whit about [the decedent] or you or anybody else, as long as you're bringing the money back and it counts out just right.

6

. . . .

Death is the final sentence. Loss of freedom pales by comparison to death. You [were] on a trajectory to follow [the decedent] into the afterlife if you continued on the path that you were on. . . .

So if you really want to make this right with society, then you've got to come out and prove you can be the better [person]. This a tragedy for two families today. One family will never be able to remedy the tragedy. Your family can move beyond and grow beyond the tragedy because you'll come out of jail.

. . . .

[T]he court is not inclined to recommend you for the work camp. What you did directly caused the death of someone else. That's among the most serious crimes in our society. And so it calls out for the mixture of punishment, but also tempered with some compassion. And we think that this plea agreement has struck the right balance.

. . . .

I'm giving you this sentence . . . so that other people pause when they set out on a career of being runners for the psychopaths at the other end of the sewer pipe.

¶ 15. Defendant claims that the sentencing court's comments show all the sentences "were part of a sentencing package meant to shock other people who might sell or dispense drugs" and therefore remanding for resentencing is necessary. In support of his argument, defendant cites State v. Martin (Martin II), in which this Court held: "When a defendant challenges his convictions in a case where his sentences are interdependent, that challenge necessitates review and redetermination of the full sentencing package." 2009 VT 15, ¶ 7, 185 Vt. 286, 973 A.2d 56 (quotation and alteration omitted). The State responds that the defendant in Martin II, unlike defendant here, had challenged all his convictions, and so "placed the entire judgment in issue." See id. ¶ 6 ("Defendant, by appealing his convictions, placed the entire judgment in issue." (quotation omitted)). The State also argues that the convictions for heroin sales "were separate and removed" from the conviction for selling or dispensing heroin and fentanyl, death resulting, and "[t]here is no reason to believe that the trial court's sentences [for the other convictions] would

7

have been any different without [the reversed] conviction." Moreover, it maintains that the court "largely agreed to the sentences proposed in the plea agreement" and the "only substantive change . . . was to actually decrease the proposed sentences" for the sale-of-heroin convictions.

¶ 16. As a threshold matter, the State represented at oral argument that it had no intention to seek reinstatement of the dismissed charges or otherwise disturb the plea agreement. Defendant also does not challenge the plea agreement, apart from the conviction that we reverse here. We therefore need not consider if vacatur of the entire plea agreement and reversal of the remaining convictions is an appropriate remedy. See State v. Settle, 141 Vt. 58, 61, 442 A.2d 1314, 1315 (1982) (declining to consider matters not briefed except in exceptional instances); cf. In re Morin, 2011 VT 132, ¶¶ 10-11, 191 Vt. 580, 45 A.3d 39 (mem.) (upholding reinstatement of charges dismissed pursuant to plea agreement after guilty plea held invalid); State v. Ettleman, 930 N.W.2d 538, 548-49 (Neb. 2019) (reversing convictions for all counts of plea agreement after determining one plea lacked sufficient factual basis "in order to put the parties back in the position prior to acceptance of the invalid plea" and citing similar holdings from other states). In light of the State's concession, the plea agreement remains intact apart from the conviction we reverse here, including the convictions for sales of heroin. The only question is whether the sentences for these other convictions should also remain, or whether this Court should vacate the sentences and remand for resentencing.

¶ 17. Although both parties focus their arguments on Martin II and whether the sentences in this case constitute a "sentencing package," 2009 VT 15, ¶ 7, it is more helpful to begin with State v. Simpson, 160 Vt. 220, 627 A.2d 346 (1993). In Simpson, the defendant appealed his convictions for vehicular homicide and leaving the scene of an accident. We reversed the vehicular-homicide conviction but affirmed the hit-and-run conviction. Id. at 227, 627 A.2d at 350-51. We then considered if "it [was] appropriate to remand the case for sentence reconsideration for the [remaining] conviction." Id. at 225, 627 A.2d at 350. We reasoned that,

8

"[g]enerally, when less than all of the convictions in a case are reversed on appeal, a remand for resentencing on the affirmed convictions is not required if separate sentences were imposed for each offense." Id. But remanding for resentencing may be appropriate when the "sentences for the reversed convictions appear to have influenced the trial court's sentencing regarding the affirmed convictions." Id.

¶ 18.    Applying these principles, we observed that "[t]he record of the sentencing hearing [did] not directly show that the vehicular homicide conviction influenced the court's sentence for the hit-and-run conviction. Rather, the record indicate[d] a lack of focus on the hit-and-run conviction." Id. We also noted that "both offenses in this case carry identical terms of imprisonment, and that most of the factors considered by the court could have been viewed with regard to either crime." Id. However, "both crimes arose out of one transaction, and . . . counsel and the court seemed to focus solely on the vehicular homicide conviction." Id. at 226-27, 627 A.2d at 350. On that basis, we "use[d] our discretion to remand the case for resentencing regarding the hit-and-run conviction." Id. at 227, 627 A.2d at 350. We directed that, on remand, the sentencing court could "impose the same or a lighter sentence" for the remaining conviction. Id.

¶ 19.    We have continued to rely on Simpson's reasoning in later cases. In State v. Gundlah, we declined to remand for resentencing after reversing some of the defendant's convictions "because it [was] absolutely clear from the sentencing court's remarks" that the sentence for the reversed charge "had no effect on the length of any of the other sentences imposed by the court." 166 Vt. 518, 526-27, 702 A.2d 52, 57 (1997) (citing Simpson, 160 Vt. at 225-26, 627 A.2d at 350). Similarly, in State v. Gagne, we declined to remand for resentencing after reversing some of the defendant's convictions because "[n]othing in the record" led us to conclude that the surviving sentences were influenced by the reversed convictions. 2016 VT 68, ¶ 44 n.4, 202 Vt. 255, 148 A.3d 986 (citing Simpson, 160 Vt. at 225, 627 A.2d at 350).

9

¶ 20.    We also relied on Simpson in State v. Martin (Martin I), 2007 VT 96, 182 Vt. 377, 944 A.2d 867, which preceded Martin II, 2009 VT 15, the case on which defendant relies.  In Martin I, the defendant operated a boat that capsized, causing the deaths of two minors.  Based on this incident, the defendant was convicted of two counts of boating while intoxicated, death resulting—one conviction for each victim.  We held that under the applicable statute the one incident of boating while intoxicated supported only one conviction, and the fact that there were multiple victims was pertinent to sentence enhancement.  Martin I, 2007 VT 96, ¶ 56.  We therefore reversed one conviction.  Id. ¶ 57.  We remanded for resentencing on the remaining conviction, citing Simpson, 160 Vt. at 226-27, 627 A.2d at 350.  Following remand, the defendant appealed again, resulting in Martin II, 2009 VT 15.

¶ 21.    In Martin II, the defendant challenged the court's authority to resentence him and argued that the new sentence violated the Double Jeopardy Clause of the U.S. Constitution.  See U.S. Const., amend. V.  We rejected the defendant's arguments, noting that the defendant "concede[d] the validity of our decision in State v. Simpson."  2009 VT 15, ¶ 5 (citing 160 Vt. at 226-27, 627 A.2d at 350).  We reasoned that the defendant had "appealed his convictions" and thereby "placed the entire judgment in issue," and the defendant's previous appeal had "succeeded only in a technical sense" and "in no way decreased [the defendant's] culpability or called into question the sentencing judge's assessment of the scope of the necessary punishment."  Id. ¶ 6 (quotation omitted).  We also drew on federal case law regarding so-called "sentencing package cases," and reasoned that "[w]hen a defendant challenges his convictions in a case where his sentences are interdependent, that challenge necessitates review and redetermination of the full sentencing package," Martin II, 2009 VT 15, ¶ 7 (quotation omitted).  In response to the defendant's constitutional challenge, we further held that "[w]here . . . the original sentences were interdependent and constituted a sentencing package designed, as a whole, to accomplish the trial judge's sentencing objectives, the [U.S.] Constitution permits resentencing on remand to any term

10

not exceeding the original aggregate sentence." Id. ¶ 11. "[T]he sentence on the surviving counts may be longer than the sentence originally imposed on those particular counts, but the new aggregate sentence [must be] no longer than the aggregate sentence initially imposed." Id. ¶ 12 (quotation omitted).

¶ 22. As in Simpson, 160 Vt. 220, 627 A.2d 346, it is unclear from the record if the sentences here are interdependent. The sentencing court imposed separate sentences for each conviction, and there is no statement in the record that the sentences were intended to form a sentencing package. However, the way the court commented globally about all of defendant's crimes as a whole, and the particular attention the court gave to the reversed conviction, as well as the fact that defendant received all his convictions as the result of a single plea agreement, suggest that defendant's sentences on his remaining convictions were influenced by the reversed conviction. See id. at 226-27, 627 A.2d at 350 (noting that "sentencing hearing does not directly show that the [reversed] conviction influenced the court's sentence for the [remaining] conviction" but exercising discretion to remand for resentencing "because both crimes arose out of one transaction, and . . . counsel and the court seemed to focus solely on the [reversed] conviction"). Accordingly, we exercise our discretion to remand the case for resentencing on the remaining convictions.

¶ 23. As the State points out, the defendant in Martin I and Martin II appealed both convictions, thereby placing "the entire judgment in issue," Martin II, 2009 VT 15, ¶ 6 (quotation omitted), whereas here defendant has appealed only one of several convictions. But this distinction does not disturb our analysis. Whether the defendant challenges one or all of the convictions received, our critical consideration in deciding whether to remand for resentencing is the interdependence of the sentences. See id. ¶ 7 (approving remanding for resentencing "in a case where [the defendant's] sentences are interdependent"); Simpson, 160 Vt. at 226, 627 A.2d at 349 (approving remanding for resentencing where "the convictions or sentences for the reversed

convictions appear to have influenced the trial court's sentencing regarding the affirmed convictions"); cf. Gundlah, 702 A.2d at 57, 166 Vt. at 526-27 (relying solely on fact that reversed conviction "had no effect" on sentences for remaining convictions in declining to remand for resentencing where defendant challenged four of eighteen convictions and we reversed one).

¶ 24.    On remand, the State may request five to ten years on the remaining counts, in keeping with the plea agreement, and defendant may argue for a two-year minimum sentence. The aggregate sentence for the remaining counts may not exceed the aggregate sentence initially imposed, which was five to ten years. See Martin II, 2009 VT 15, ¶ 12; cf. United States v. Ventura, 864 F.3d 301, 306 (4th Cir. 2017) (calculating aggregate sentence).

Defendant's conviction and sentence for selling or dispensing fentanyl and heroin, death resulting, are reversed and the charge is remanded for further proceedings. The sentences for the remaining three counts of sales of heroin are vacated and remanded for resentencing consistent with this opinion.

FOR THE COURT:

_____

Chief Justice